

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 1 6 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

2 06116

**3-05CV2469-G**

| | |
|---|---|
| JAMES WADE BROWNE AND KEVIN CALANDRO | § § § |
| Plaintiffs, | § § |
| v. | § § |
| NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., | § § § |
| Defendant. | § § |

Civil Action No. _____

### NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.'S
### NOTICE OF REMOVAL

Defendant National Association of Securities Dealers, Inc. ("NASD"), by its attorneys, and pursuant to 28 U.S.C. §§ 1441 and 1446, and in accordance with 28 U.S.C. § 1331 respectfully notice this Court that:

1.      A civil action commenced on December 9, 2005, in the District Court of Dallas County, Texas, 101st Judicial District, bearing docket no. 05-12327 and captioned *James Wade Browne and Kevin Calandro v. NASD* ("state court action").

2.      Without serving the petition or communicating in any way with NASD, attorney for Plaintiffs attempted to secure a temporary restraining order against NASD on December 9, 2005. Judge David Evans of the 193rd Judicial District, acting for the 101st Judicial District, denied Plaintiffs' request for a temporary restraining order.

3.      NASD was served with a copy of Plaintiffs' Verified Original Petition and Request for Disclosure ("Petition") on December 14, 2005.

4.      Upon information and belief, no other pleadings or orders have been entered with regard to any of the papers served or filed in the state court action.

5. True and correct copies of all process and pleadings served on Defendants are attached hereto as **Exhibit A** pursuant to 28 U.S.C. § 1446(a). Pursuant to the Local Rules of this Court, an index of all documents filed in the state court action, a certified copy of the state court docket sheet, a copy of each document filed in the state court, and a separately signed certificate of interested persons in compliance with Local Rule 3.1(f) are attached hereto as **Exhibit B.** An index of all appended matters precedes Exhibit A.

6. This action may be removed to this Court by the NASD pursuant to 28 U.S.C. § 1441 because this is a civil action over which this Court has federal question jurisdiction pursuant to the provisions of 28 U.S.C. § 1331. Plaintiffs are respondents in a NASD proceeding brought pursuant to 15 U.S.C. § 78o-3 of the Securities Exchange Act of 1934 ("Exchange Act"). Federal law preempts state law jurisdiction over NASD proceedings. *Hawkins v. Nat'l Assoc. of Sec. Dealers, Inc.,* 149 F.3d 330, 331-32 (5th Cir. 1998). 15 U.S.C. § 78aa provides "The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." Furthermore, 15 U.S.C. § 78y provides that the exclusive judicial remedy for complaints arising from conduct of NASD disciplinary proceedings lies in the United States Court of Appeals following appeal to the Securities and Exchange Commission. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 616 F.2d 1363, 1367 (5th Cir. 1980).

7. A copy of a notice of Filing of a Notice of Removal is attached hereto as **Exhibit C**. Promptly after filing this Notice, NASD will file a copy with the District Court of



Dallas County, Texas, 101st Judicial District, and will serve that notice on plaintiffs as required under 28 U.S.C. § 1446(d).

WHEREFORE, Defendant National Association of Securities Dealers, Inc. removes the state court action from the District Court of Dallas County, Texas, 101st Judicial District.

DATE: <u>December 16, 2005</u>.

        Respectfully submitted,

        **GIBSON, DUNN & CRUTCHER LLP**

        By: _____

        Evan S. Tilton
        State Bar No. 24033275
        2100 McKinney Avenue, Suite 1100
        Dallas, Texas 75201
        Telephone: (214) 698-3156
        Facsimile: (214) 571-2935

        F. Joseph Warin
        **GIBSON, DUNN & CRUTCHER LLP**
        1050 Connecticut Avenue, N.W.
        Washington, D.C. 20036-0539
        Telephone: (202) 955-8500
        Facsimile: (202) 467-0539
        Of Counsel

        Terri L. Reicher
        Associate Vice President and
        Associate General Counsel
        **NATIONAL ASSOCIATION OF**
        **SECURITIES DEALERS, INC.**
        1735 K Street, N.W.
        Washington, D.C. 20006-1500
        Telephone: (202) 728-8967
        Facsimile: (202) 722-8894

        **ATTORNEYS FOR DEFENDANT**
        **NATIONAL ASSOCIATION OF**
        **SECURITIES DEALERS, INC.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served by facsimile and

certified mail, return receipt requested, on the 16th day of December 2005, as follows:

> Christopher Bebel
> 400 Louisiana, Suite 900
> Houston, Texas 77002
> Facsimile: (713) 236-7758
>
> **Attorneys for James Wade Browne
> and Kevin Calandro**

Evan S. Tilton

Index

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES WADE BROWNE AND KEVIN CALANDRO | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. _____ |
| NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., | § § § | |
| Defendant. | § § § | |

### INDEX OF EXHIBITS TO
### NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.'S
### NOTICE OF REMOVAL

A.   **Plaintiffs' Verified Original Petition and Request for Disclosure**
     filed-stamped 12/09/05

B.   **Documents required by Local Rule 81.1**

    1.   **Docket Sheet** (certified copy) regarding Cause No. DC-05-12327
          pending in the 101st Judicial District Court of Dallas County, Texas

    2.   **Documents filed** in Cause No. DC-05-12327
          pending in the 101st Judicial District Court of Dallas County, Texas

        a.   **Plaintiffs' Verified Original Petition and Request for Disclosure**
               filed-stamped 12/09/05

        b.   **Order Denying Temporary Restraining Order** executed on
               12/09/05

    3.   **Certificate of Interested Persons**

C.   **State Court** Notice of Filing For Removal



FORM NO. 353-3—CITATION

# THE STATE OF TEXAS

**To: NASD**
**12801 N CENTRAL EXPWY, SUITE 1050, DALLAS, TEXAS 75243**

GREETINGS:

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty  days after you were served this citation and **ORIGINAL** petition, a default judgment may be taken against you.    Your answer should be addressed to the clerk of the **101st District Court** at 600 Commerce Street, Dallas, Texas 75202.

Said Plaintiff being **JAMES WADE BROWNE**

Filed in said Court  on this the 9th day of December, 2005 against

**NASD**

For suit, said suit being numbered **DC-05-12327**, the nature of which demand is as follows:
Suit On , OTHER (CIVIL) etc. as shown on said petition          , a copy of which accompanies this citation.      If this citation is not served,  it  shall be returned unexecuted.
WITNESS: JIM HAMLIN, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office
**on this the 14th day of December, 2005**

ATTEST: JIM HAMLIN
Clerk of the District Courts of Dallas, County, Texas

By _____

*Deputy*

CARROLL JONES

---

**ATTY**

# CITATION

No.: **DC-05-12327**

**JAMES BROWNE**
**vs.**
**NASD**

**ISSUED**
**on this the 14th day of December,**
**2005**

JIM HAMLIN
Clerk District Courts,
Dallas County, Texas
By **CARROLL JONES**, Deputy

Attorney for Plaintiff
CHRISTOPHER J BEBEL
440 LOUISIANA, SUITE 900
HOUSTON, TEXAS 77002
713-236-7750 TELEPHONE

NO. _____ 05-12327

| | |
|---|---|
| JAMES WADE BROWNE AND KEVIN CALANDRO | IN THE DISTRICT COURT |
| VS. | E-101st DISTRICT |
| NASD | DALLAS COUNTY, TEXAS |

FILED

2005 DEC -9 PM 4:48

JIM HAMLIN
DALLAS CO., TEXAS

DEPUTY

PLAINTIFFS' VERIFIED ORIGINAL PETITION
AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JAMES WADE BROWNE and KEVIN CALANDRO (hereinafter

referred to as "Plaintiffs"), complaining of the NASD (hereinafter referred to as "Defendant

NASD"), and for their causes of action show the following:

A. DISCOVERY CONTROL PLAN

1. Discovery is intended to be conducted under Level 2 of Texas Rule of Civil

Procedure 190.4.

B. PARTIES

2. Plaintiff James Wade Browne is an individual conducting business in Dallas

County, Texas who resides at his homestead, 4435 Southern Avenue, Dallas, Texas.

3. Plaintiff Kevin Calandro resides at his homestead, 9002 Woodhurst Drive,

Dallas, Texas 75243, and is an individual conducting business in Dallas County, Texas.

4. Defendant NASD is a private-sector regulator which operates under the

oversight of the U.S. Securities and Exchange Commission. The NASD, which is based in

Washington, D.C., is a non-profit organization that, until recently, was best known as the

owner of the NASDAQ Stock Market. Over 5,000 securities brokerage firms, and more than

1



600,000 registered securities representatives, come within the regulatory jurisdiction of the

NASD. The NASD has three operating divisions, one of which is known as the Regulatory

Policy and Oversight division. That unit maintains various functions, including the initiation

of regulatory actions by its Department of Enforcement ("DOE").

C. JURISDICTION AND VENUE

5. Defendant Jurisdiction is proper in this Court as the amount in controversy

exceeds the minimum jurisdictional limits of this Court.

6. Venue is proper in Dallas County as it is the county where the cause of action

or a part thereof accrued. No mandatory venue exception exists which would permit transfer

to any other county.

D. REQUEST FOR DISCLOSURE

7. Under Texas Rule of Civil Procedure 194, the Plaintiffs request that

Defendant NASD disclose, within 50 days of service of this request, the information or

material described in Rule 194.2(a)-(k).

E. INITIATION OF REGULATORY PROCEEDING

8. In April 2005, DOE issued a complaint against Mr. Browne and Mr. Calandro.

That complaint, which focuses upon the sale of securities issued by e2 Software Corporation

and e2 Communications, Inc. (collectively, "e2"), reflects three causes. The First Cause of

Complaint alleges that Mr. Browne violated two industry rules, in that, he "solicited and/or

referred 24 investors" all as more fully detailed on DOE's "Exhibit A," which DOE attached

to its complaint. The Second Cause of Complaint references various other acts which are not

directly related to DOE's "Exhibit A." The Third Cause of Complaint once again focuses

upon "Exhibit A." Specifically, in the Third Cause of Complaint, DOE asserts that Mr.

2



Calandro likewise violated two industry rules by engaging in parallel conduct with respect to nine investors, as reflected on "Exhibit A."

### F. DEFENDANT'S EMPLOYMENT OF FALSE DOCUMENT

9. The allegations which have been made by DOE in Cause 1 and Cause 3 of its complaint are inextricably intertwined with accuracy and authenticity of "Exhibit A." Notwithstanding DOE's decision to rest the assertions at issue upon the viability of "Exhibit A," it's clear that absolutely no weight may be placed upon that document. "Exhibit A" is a complete sham. The fraudulent character of DOE's "Exhibit A" becomes apparent as soon as an analysis of the document is commenced. Notations appearing at the top of the document reflect a March 2, 2000 date, while at the same time identifying the company as "e2 Communications, Inc." As DOE well knows, however, the company was not known as "e2 Communications, Inc." on March 2, 2000. The company did not bear that name during any portion of March 2000. The same is true for April 2000. Up until May 15, 2000, the company was known as "e2 Software Corporation."

### G. CORPORATE DIRECTOR CHARACTERIZES "EXHBIT A" AS FRAUDULENT

10. Bennie M. Bray, who served on the e2 board of directors from April 1, 1999 through March 1, 2002, recently signed an affidavit which addresses "Exhibit A." In doing so, Mr. Bray noted that he had devoted hundreds of hours to the review and analysis of e2 documents while acting on behalf of the company. However, as stated by Mr. Bray in his affidavit, he "never saw that document" during the period in which he was a member of the e2 board of directors. Thereafter, Mr. Bray further expounded upon the character of DOE's

3

"Exhibit A" by offering the following observation: "notwithstanding my involvement in hundreds of conversations pertaining to the affairs of e2 during the period in which I was affiliated with that company, I was never involved in any conversations which encompassed, or even addressed, ["Exhibit A"] . . . ." Mr. Bray then went on to sum things up by making it clear that DOE's "Exhibit A" "is not a genuine e2 document or business record."

## H. SUCCESSOR TRUSTEE CHARACTERIZES "EXHIBIT A" AS FRAUDULENT

11. Near the close of January 2002, an involuntary petition in bankruptcy was filed against e2. In the wake of that bankruptcy filing, a Chapter 11 Trustee was given the responsibility of overseeing the affairs of e2. As time progressed, a unit known as the e2 Creditors Trust was formed, with the e2 Litigation Trust also being assembled. Since August 2003, Steven C. Metzger has served as the successor Trustee of both the e2 Creditors Trust and the e2 Litigation Trust. Recently, after being provided with an overview of the underlying circumstances, Mr. Metzger articulated a series of observations which parallel the sworn statements of Mr. Bray. Through an affidavit he recently executed, Mr. Metzger noted that upon assuming the aforementioned successor trustee responsibilities, he diligently interviewed scores of individuals who had been affiliated with e2, including employees, directors, consultants, and legal counsel. At the same time, he poured through stacks of e2 business records and corporate documents, including materials he obtained through discovery efforts undertaken in connection with litigation against Jeff Farris and Jeff Cordes, two former officers of e2. Notwithstanding that massive dedication of time and effort, however, Mr. Metzger's affidavit makes it clear that he never came across DOE's "Exhibit A" until

4

Mr. Browne presented it to him on June 18, 2005. Moreover, according to Mr. Metzger, no one even referenced the contents of "Exhibit A" throughout the course of either lawsuit involving Farris or Cordes.

12. After taking all pertinent considerations into account, Mr. Metzger found "Exhibit A" to be a wholly fictitious document. As specifically stated by Mr. Metzger, DOE's "Exhibit A" "is not a genuine business record of e2 Communications, Inc. and was not maintained by e2 Communications, Inc. in the ordinary course of its business pursuant to its document retention practices." Included among the factors tending to support Mr. Metzger's characterization of "Exhibit A" is the realization that although "Exhibit A" purports to track the results of a particular securities offering, that offering had not even been effected as of March 2, 2000, the date reflected on "Exhibit A."

## I. CAUSES OF ACTION

### Breach of Contract

13. Plaintiffs incorporate by reference the allegations made in the previous paragraphs as if set forth herein in their entirety. Plaintiffs likewise incorporate by reference the attached affidavits of James Wade Browne and Kevin Calandro. Without waiver of the above and foregoing, Plaintiffs allege a cause of action against Defendant NASD for breach of contract. The NASD asserts jurisdiction over Plaintiffs based on the contractual relationship which exists between itself and each of the Plaintiffs. However, as part of that contractual relationship, the NASD maintains an ongoing responsibility to exercise its contractually vested powers while acting in good faith and adhering to principles of fundamental fairness and due process. Notwithstanding these considerations, the NASD has knowingly and intentionally violated its continuing contractual obligations to Plaintiffs



through its knowing and willful employment of fraudulent evidence (i.e., "Exhibit A").  As a result of Defendant NASD's breach of contract, Plaintiffs will suffer irreparable harm and damages.

<u>Common Law Fraud</u>

14.  Plaintiffs incorporate by reference the allegations made in the previous paragraphs as if set forth herein in their entirety.  Plaintiffs likewise incorporate by reference the attached affidavits of James Wade Browne and Kevin Calandro.  Without waiver of the above and foregoing, Plaintiffs allege a cause of action against Defendant NASD for common law fraud.  While operating as a private-sector regulator, the NASD expressly and impliedly portrays itself as a completely honest and forthright entity which conducts its affairs with integrity.  However, contrary to these express and implied proclamations, and in violation of the duties and obligations it owes to Plaintiffs, the NASD has engaged, and is continuing to engage, in fraudulent, deceitful practices that are designed to inflict irreparable injury upon Plaintiffs.  As a result of Defendant NASD's actions, Plaintiffs will suffer irreparable harm and damages.

<u>Conspiracy</u>

15.  Plaintiffs incorporate by reference the allegations made in the previous paragraphs as set forth at herein in their entirety.  Plaintiffs likewise incorporate by reference the attached affidavits of James Wade Browne and Kevin Calandro.  Without waiver of the above and foregoing, Plaintiffs allege a cause of action against Defendant NASD for conspiracy.  Defendant NASD has maintained, and continues to maintain, a contractual relationship with Plaintiffs while expressly and impliedly agreeing to act in good faith and with honesty; and while expressly and impliedly agreeing to discharge its responsibilities in a

6

manner characterized by fundamental fairness. However, notwithstanding these considerations, Defendant NASD has conspired, and is continuing to conspire, with other parties, the identity of whom is expected to be the subject of Plaintiffs' anticipated discovery efforts. Pursuant to, and as a part of, this conspiracy, Defendant NASD has engaged, and is continuing to engage, in fraudulent, practices that are designed to inflict irreparable injury upon Plaintiffs. As a result of Defendant NASD's actions, Plaintiffs will suffer irreparable harm and damages.

## J. DAMAGES

16. Plaintiffs incorporate by reference the allegations made in the previous paragraphs as if set forth herein in their entirety. Plaintiffs seek damages within the jurisdictional limits of the Court, and further seek a Temporary Restraining Order.

## K. APPLICATION FOR TEMPORARY RESTRAINING ORDER

17. Plaintiffs incorporate by reference the allegations in the previous paragraphs as if set forth herein in their entirety. Plaintiffs assert that they will suffer irreparable harm should Defendant NASD be allowed to continue its practice of knowingly employing false and fraudulent evidence in the proceeding it has initiated against Plaintiffs.

18. Plaintiffs have no adequate remedy at law for the damages and injuries described above. The damages and injuries are continuing.

19. It is imperative that this Trial Court act immediately and temporarily restrain Defendant NASD from continuing with the conduct described herein.

20. It is necessary for this Trial Court to act immediately prior to notice on Defendant NASD based on the continuing harm that is being brought by its ongoing and fraudulent course of conduct.

21. In order to preserve the status quo and preserve the rights of Plaintiffs, Defendant NASD should be cited to appear and show cause why it should not be temporarily restrained during the pendency of this action against it.

22. For these reasons, Plaintiffs request that:

1. A temporary restraining order be issued without notice to Defendant NASD, restraining Defendant NASD from continuing to knowingly employ fraudulent evidence against Plaintiffs in connection with the proceeding it has initiated against Plaintiffs.

## L. BOND REQUEST

23. Plaintiffs believe that no bond is necessary because Defendant NASD will suffer no financial consequences if it is precluded from knowingly employing fraudulent evidence against Plaintiffs. In the event a Bond is required, Plaintiffs request that such Bond be set at $500.00.

## M. REQUEST FOR TEMORARY INJUNCTION

24. Plaintiffs ask this Trial Court to set its application for temporary injunction hearing and, after the hearing, issue a temporary injunction against Defendant NASD.

## N. ATTORNEY'S FEES

25. The Plaintiffs incorporate by reference the allegations made in the previous paragraphs as if set forth herein in their entirety. By reason of all above and foregoing, Plaintiffs are requesting reasonable attorney fees for the prosecution of this matter. In this connection, the Plaintiffs will show that the attorney whose name is subscribed to this pleading has been employed to assist Plaintiffs in the prosecution of this action or appeal.

## O.    CERTIFICATION OF CONFERENCE WITH COUNSEL

8

The undersigned attorney hereby certifys that he has conferred with Sean Firley and Mark Dauer, counsel for Defendant NASD, and demanded that the NASD cease engaging in fraudulent conduct, and further advised them of his intent to seek a temporary restraining order absent corrective action being taken on an immediate basis, to no avail

## P. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs James Wade Browne and Kevin Calandro request that Defendant NASD be cited to appear and answer herein and that on final hearing, Plaintiffs have:

A. Judgment against Defendant NASD, with prejudgment interest at the legal rate until the date of judgment;

B. Reasonable attorney's fees with interest at the legal rate from judgment until paid;

C. Interest after judgment at the legal rate as allowed by statute until paid;

D. Costs of the court; and

E. Such other and further relief, at law or in equity, to which Plaintiffs are justly entitled.

Respectfully submitted,

_____

Christopher Bebel
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone (713) 236-7750
Facsimile (713) 236-7758

**Attorney for James Wade Browne and**

**Kevin Calandro**

10

<u>VERIFICATION</u>

THE STATE OF TEXAS    §
                         §

COUNTY OF DALLAS   §

      BEFORE ME, the undersigned authority, on this day personally appeared James Wade Browne, known to me to be the person whose name is subscribed to the foregoing Plaintiffs' Original Petition, and stated on his oath that the foregoing statements contained in Plaintiffs' Original Petition are true and correct.

      Still further, my affidavit with exhibits further supports the foregoing Plaintiffs' Verified Original Petition and Request for Disclosure.

By: _____

JAMES WADE BROWNE

      SWORN AND SUBSCRIBED BEFORE ME by the said JAMES WADE BROWNE, on this the ___ day of _____, 2005, to certify which witness my hand and seal of office.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

DAVID W SMITH
NOTARY PUBLIC
State of Texas
Comm. Exp. 07-11-2006

**11**

## VERIFICATION

THE STATE OF TEXAS    §
                      §

COUNTY OF DALLAS    §

      BEFORE ME, the undersigned authority, on this day personally appeared ~~James Wade Brown~~ Kevin Calandro, known to me to be the person whose name is subscribed to the foregoing Plaintiffs' Original petition, and stated on his oath that the foregoing statements contained in Plaintiffs' Original Petition are true and correct.

      Still further, my affidavit with exhibits further supports the foregoing Plaintiffs' Verified Original Petition and Request for Disclosure.

By: _____

                        Kevin Calandro

      SWORN AND SUBSCRIBED BEFORE ME by the said Kevin Calandro, on this the 9 day of DEC, 2005, to certify which witness my hand and seal of office.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

DAVID W SMITH
NOTARY PUBLIC
State of Texas
Comm. Exp. 07-11-2006

12

## AFFIDAVIT OF J. Wade Browne

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Before me, the undersigned authority, on this day personally appeared J. Wade Browne, known to me, who being by me duly sworn, on oath, stated the following:

1.    My name is J. Wade Browne.  I am over the age of twenty-one (21) years, suffer no legal or mental disabilities, and am fully competent to make this affidavit.

2.    I have been a resident of Dallas County, Dallas, Texas since 1979 and reside at my homestead , 4435 Southern Avenue, Dallas, Texas 75205-2622

3.    I am a general securities representative for an NASD Broker/Dealer.

4.    I have been named as a respondent in an NASD complaint dated April 25, 2005, disciplinary hearing number C05050015.  Attached to that NASD complaint and incorporated by reference therein was a document marked as Exhibit "A".  Attached hereto as Plaintiffs' Exhibit 1 and incorporated by reference herein is a copy of the aforementioned complaint along with Exhibit "A".

5.    As a means of establishing the falsity of Exhibit "A" affidavits were recently obtained from Bennie M. Bray and Steven C. Metzger.  Those affidavits, which are attached hereto, as Plaintiffs' Exhibits 2 and 3 respectively, and incorporated by reference herein, state that the NASD's Exhibit "A" is a false and misleading document.

6.    I have reviewed Plaintiffs' Verified Original Petition and Request for Disclosure and the assertions set forth therein are true and correct to the best of my knowledge.

_J. Wade Browne_ (signature)

J. Wade Browne

Subscribed and sworn to before me on this 9th day of December, 2005.

_signature_

Notary Public, State of Texas

Name (printed): _Dara W Sm..._

My commission expires: _7/ 11 / 2006_

(Notary seal: DAVID W SMITH, NOTARY PUBLIC, State of Texas, Comm. Exp. 07-11-2006)

**AFFIDAVIT OF J. Wade Browne -- Page 2**

*Plaintiff's Exhibit 1*

# NASD
## OFFICE OF HEARING OFFICERS

| | |
|---|---|
| Department of Enforcement,<br><br>                  **Complainant**<br>v.<br><br>**Kevin Calandro,**<br>General Securities Representative<br>[CRD No. 1459109]<br><br>   and<br><br>**James W. Browne,**<br>General Securities Representative<br>[CRD No. 1189996]<br><br>                 **Respondents.** | Disciplinary Proceeding<br>No. C05050015<br><br>Hearing Officer: _____<br><br>**COMPLAINT** |

Upon information and belief, Complainant alleges as follows:

1.    Respondent James W. Browne entered the securities industry on June 1, 1983 as a General Securities Representative with an NASD member. During all periods mentioned herein, Browne was associated with member firm UBS Financial Services Inc. (f/k/a UBS Paine Webber) (hereinafter "UBS") until September 22, 2000, when he began employment with member firm Lehman Brothers Inc. ("Lehman"). Browne is currently registered with NASD members Maymont Partners, Inc. and Coleman River Capital, LLC, and remains subject to the jurisdiction of NASD.

2.    Respondent Kevin Calandro entered the securities industry on September 13, 1988 as a General Securities Representative with an NASD member. During all periods

1



Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

mentioned herein, Calandro was associated with UBS. Calandro is currently registered

with NASD members Sanders Morris Harris, Inc. and SMH Capital Advisors, Inc.,

and remains subject to the jurisdiction of NASD.

## FACTS COMMON TO ALL CAUSES OF COMPLAINT

3.     During 1997 Browne learned of a company called e2 Communications, Inc. ("e2")

from e2's Chief Executive Officer Jeff Farris. Farris, who was Browne's member firm

customer, wanted Browne to review e2's business plan.

4.     e2 was a privately held start-up technology company that sought initial investors in

anticipation of having an initial public offering ("IPO").

5.     Browne examined the e2 business plan along with Calandro, who also shared Farris as

a member firm customer under a joint representative number.

6.     Beginning in May 1998 and into 1999, Browne, Priscilla Browne (Browne's wife) and

Debbie Calandro (Calandro's wife) purchased stock in e2.

7.     Beginning in 1998, Browne also commenced networking activities for e2 as a private

investor. As set forth more fully below, Browne and Calandro solicited and/or referred

investors to e2. Browne also introduced fellow employees of UBS to e2.

8.     In 1999, Browne became a non-voting "advisory director" of e2 and continued to

engage in networking activities on e2's behalf.

2



Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

9. On April 15, 1999, Browne was issued 25,000 stock options (which split to 75,000) as compensation for services provided as an "advisory director" to e2.

10. Under an Advisory Director Agreement dated September 25, 2000,[1] e2 retained Browne "as an independent contractor to perform advisory services." In exchange, Browne agreed to use his best efforts to provide e2 with "advice pertaining to strategic planning and management."

11. Through January 2000, Browne and Calandro discussed e2 as an investment with a number of their member firm clients.

12. On March 11, 2000, Farris and another e2 director executed a Unanimous Written Consent in Lieu of Special Meeting of the Board of Directors (the "Consent").

13. The Consent pertains to the issuance of common stock in connection with private placement of Series B Preferred e2 stock.

14. As set forth in the Consent, Browne and Calandro "requested that [e2] discharge its obligations to them by paying their finders' fees in shares of common stock . . ." and that Browne had requested "that the shares . . . to be issued to him instead be issued to his wife Priscilla F. Browne." Emphasis added.

---

[1] Browne served as an advisory director before the actual date of the Advisory Director Agreement.

3

COM01
Rev 07/12/02



Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

15.   Under the Consent, e2 authorized  the issuance of 10,177 shares of common stock to

Priscilla Browne and 3,137 shares of common stock to Calandro. Both Browne and

Calandro received and kept their respective shares.

16.   On or about January 25, 2002, e2 filed for Bankruptcy.  At or about the same time,

Browne and other e2 Directors commenced a litigation trust to pursue Farris for alleged

improprieties regarding e2.

### FIRST CAUSE OF COMPLAINT
### Participation in Private Securities Transactions
### NASD Conduct Rules 3040 and 2110
### (Respondent Browne)

17.   Paragraphs 1 through 16 are realleged and incorporated herein by reference.

18.   During the period from December 1999 through March 2000, Browne solicited and/or

referred 24 investors to e2, all as more fully detailed on Exhibit "A", attached hereto.

19.   Six of the 24 investors that Browne solicited were Browne's member firm customers.

20.   After being solicited and/or referred to e2 by Browne, all 24 investors purchased

securities issued by e2 in the aggregate amount of $1,780,996.

21.   Shortly after March 11, 2000, Browne accepted 10,177, common shares of e2 as

compensation for his participation in the aforementioned private securities

transactions.  Browne's receipt of the 10,177 common shares constitutes selling

compensation as defined in NASD Conduct Rule 3040.

4

COM01
Rev 07/12/02

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

22.    Browne did not provide written notice to and obtain written approval from his member

firm regarding his participation in the aforementioned private securities transactions.[2]

23.    Such acts, practices, and conduct constitute separate and distinct violations of NASD

Conduct Rules 3040 and 2110 by Respondent Browne.

### SECOND CAUSE OF COMPLAINT
### Participation in Private Securities Transactions
### NASD Conduct Rules 3040 and 2110
### (Respondent Browne)

24.    Paragraphs 1 through 16 are realleged and incorporated herein by reference.

25.    During the period from August 2000 through September 2000, Browne solicited public

customer SF to purchase both e2 common shares in the aggregate amount of

$300,000.47 from a private investor and e2 Series C Convertible Preferred Stock in the

amount of $300,000 directly from e2.  Browne also communicated with customer SF

via electronic mail regarding the timing of the purchase of the shares, to whom and

where the check should be sent.

26.    On March 5, 2001 e2 conducted a telephonic Board of Directors meeting.

27.    The minutes from the March 5, 2001 Board of Directors meeting reflect that Browne

provided services in connection with the financing of the e2 and that e2 had negotiated

the issuance of 150,000 shares of e2 common stock to Browne.

---

[2] In addition, when filling out a form requesting approval to be a non-voting director of e2, Browne did not disclose that seven months earlier he had received 25,000 stock options from e2. Even though he had already received the stock options, Browne answered "No" to the question of whether he would receive directors' fees from e2.

5

COM01
Rev 07/12/02

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

28. In exchange for Browne's solicitation of public customer SF's purchases in the amount

of $600,000.47, as well as Browne's service as an advisory director by facilitating the

purchases, on March 5, 2001 e2 issued 150,000 shares of common stock to Browne.

29. Browne's receipt of the 150,000 shares constitutes selling compensation as defined in

NASD Conduct Rule 3040.

30. Browne did not provide written notice to and obtain written approval from his member

firm regarding his participation in the aforementioned private securities transactions.

31. Such acts, practices, and conduct constitute separate and distinct violations of NASD

Conduct Rules 3040 and 2110 by Respondent Browne.

### THIRD CAUSE OF COMPLAINT
#### Participation in Private Securities Transactions
#### NASD Conduct Rules 3040 and 2110
#### (Respondent Calandro)

32. Paragraphs 1 through 16 are realleged and incorporated herein by reference.

33. During the period from January 2000 through March 2000, Calandro solicited and/or

referred nine investors to e2, as more fully detailed on Exhibit "A", attached hereto.

34. Four of the nine investors that Calandro solicited were customers of Calandro's

employer member firm.

35. After being solicited and/or referred to e2 by Calandro, all nine investors purchased

securities issued by e2 in the aggregate amount of $548,996.

6

COM01
Rev 07/12/02



Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

36.   Shortly after March 11, 2000, Calandro accepted 3,137 common shares of e2 as

        compensation for his participation in the aforementioned private securities

        transactions.

37.   Calandro's receipt of the 3,137 common shares constitutes selling compensation as

        defined in NASD Conduct Rule 3040.

38.   Calandro did not provide written notice to and obtain written approval from his member

        firm regarding his participation in the aforementioned private securities transactions.

39.   Such acts, practices, and conduct constitute separate and distinct violations of NASD

        Conduct Rules 3040 and 2110 by Respondent Calandro.

## PRAYER FOR RELIEF

WHEREFORE, Complainant respectfully requests:

A.   Findings of fact and conclusions of law that the Respondents committed the violations

        charged and alleged herein;

B.   An order imposing sanctions upon the Respondents in accordance with NASD Rule

        8310;

C.   An order requiring the Respondents to disgorge fully any and all ill-gotten gains and/or

        make full and complete restitution, together with interest;

7

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

D. An order imposing such costs of any proceeding as are deemed fair and appropriate under

the circumstances in accordance with NASD Rule 8330; and

E. An order imposing any other fitting sanction.

Dated: April 25, 2005

Mitch Atkins, Director
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8000
FAX: 561-443-7995

Sean W. Firley
Senior Regional Attorney
Department of Enforcement
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8125
FAX: 561-443-7995

Rory C. Flynn, Of Counsel
Department of Enforcement
NASD
1801 K Street, N.W., Suite 800
Washington, D.C. 20006
202-974-2874

Andrew A. Favret, Of Counsel
NASD, District No. 5
1100 Poydras Street, Suite 850

8

COM01
Rev 07/12/02

**Complaint**
**Case No. C05050015**
**James W. Browne/Kevin Calandro**

**New Orleans, Louisiana 70163-0802**
**Phone: 504-522-6527**
**FAX:  504-522-4077**

9

COM01
Rev 07/12/02

**NASD**
**OFFICE OF HEARING OFFICERS**

| | |
|---|---|
| Department of Enforcement, | Disciplinary Proceeding |
| | No. C050500015 |
| Complainant, | |
| | |
| v. | Hearing Officer: _____ |
| | |
| Kevin Calandro, | |
| General Securities Representative | Date: April 25, 2005 |
| [CRD No. 1459109] | |
| | |
| and | |
| | |
| James W. Browne, | |
| General Securities Representative | |
| [CRD No. 1189996] | |
| | |
| Respondents. | |

**ADDENDUM TO COMPLAINT**

The customers referenced in the Complaint by initials are identified as follows:

SF – Stephen Flory

Sean W. Firley
Senior Regional Attorney
Department of Enforcement
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8125
FAX: 561-443-7998

*Exhibit "A"*

e2 Communications, Inc.
Series B Convertible Preferred Stock
Subscription List : March 2, 2000

## NASD
## OFFICE OF HEARING OFFICERS

| | |
|---|---|
| Department of Enforcement, | Disciplinary Proceeding |
| Complainant, | No. C050500015 |
| v. | Hearing Officer: _____ |
| Kevin Calandro,<br>General Securities Representative<br>[CRD No. 1459109] | Date: April 25, 2005 |
| and | |
| James W. Browne,<br>General Securities Representative<br>[CRD No. 1189996] | |
| Respondents. | |

### CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April 2005, I caused a copy of the foregoing Notice of Complaint and Complaint to be sent by first class certified mail to: Mr. James Wade Browne, 4435 Southern Avenue, Dallas, Texas 75205 (Receipt No.7004116000067531420?), and Mr. Kevin Calandro, 9002 Woodhurst, Dallas, Texas 75243 (Receipt No. 7004116000067531421?).

Sean W. Firley
Senior Regional Attorney
Department of Enforcement
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8125
FAX: 561-443-7998

*Plaintiff's Exhibit 2*

## AFFIDAVIT OF BENNIE M. BRAY

STATE OF TEXAS      §
                          §
COUNTY OF DALLAS   §

Before me, the undersigned authority, on this day personally appeared Bennie M. Bray, known to me, who being by me duly sworn, on oath, stated the following:

1.     My name is Bennie M. Bray. I am over the age of twenty-one (21) years, suffer no legal or mental disabilities, and am fully competent to make this affidavit.

2.     I served on the Board of Directors of e2 Software Corporation, subsequently known as e2 Communications, Inc. (collectively, "e2") from April 1, 1999 through March 1, 2002, the date on which a Chapter 11 Trustee was appointed to oversee the affairs of e2. As such, I have personal knowledge of the facts stated herein, all of which are true and correct.

3.     Attached as Exhibit 1 and incorporated by reference herein is a copy of a March 11, 2000 Unanimous Written Consent in Lieu of a Special Meeting of the Board of Directors ("UWC") signed by me and Jeffrey L. Farris ("Farris"), the only individuals who then served on the e2 Board of Directors. Pursuant to that UWC, which was drafted by outside counsel for e2 without my input or participation, e2 issued 10,177 shares of common stock to Priscilla F. Browne (J. Wade Browne's spouse). Those shares, however, were thereafter returned and canceled. E2 issued 3,137 shares to Debbie Calandro (Kevin Calandro's spouse). There was absolutely no nexus, connection or relationship of any type between the issuance of those two blocks of e2 common stock and the offer or sale of e2 securities. Neither I nor anyone else at e2 had any agreement or understanding, whether in writing or orally, with J. Wade Browne, Kevin Calandro, or anyone acting on behalf of J. Wade Browne or Kevin Calandro, to pay finder's fees, commissions or any other remuneration to them, or for their benefit, pursuant to the offer or sale

**AFFIDAVIT OF BENNIE M. BRAY – Page 1**

of e2 securities, including e2 Series B Convertible Stock. The erroneous language appearing in the UWC which suggests otherwise was deemed inconsequential to me and other e2 personnel at the time the UWC was created. As a result, no remedial or corrective action was implemented. Such acts were deemed unwarranted and unnecessary, especially on account of e2's challenging financial situation. In my experience, corporations cannot make a gift of corporate assets, except for charitable purposes. While I do not have personal knowledge as to why counsel inserted the pertinent language appearing in the UWC, I can only assume it was for this reason. In any event, the text of the UWC is inaccurate.

4.      Prior to the time at which the UWC was finalized, neither that document nor any draft thereof was ever provided to J. Wade Browne or Kevin Calandro. Moreover, upon completion of the UWC, neither J. Wade Browne nor Kevin Calandro was advised of the contents of that document or the language appearing therein. Consequently, J. Wade Browne was not told, and had no reason to know, that the UWC characterized the issuance of e2 shares to his wife as a "finder's fee." Likewise, Kevin Calandro was not told, and had no reason to know, that the UWC characterized the ostensible issuance of e2 shares to him as a "finder's fee."

5.      The 10,177 shares of common stock issued to Priscilla F. Browne and 3,137 shares of common stock issued to Debbie Calandro were restricted, non-transferable legend bearing stock that had no value and per e2 policy and I.R.S. rules remained under the ownership and control of e2.

6.      Based upon conduct I have witnessed, Farris is highly adversarial toward J. Wade Browne. J. Wade Browne was a shareholder plan proponent of the Third Amended Joint Plan of Reorganization for e2, which created the e2 Litigation Trust. Moreover, J. Wade Browne played an instrumental role in creating the e2 Litigation Trust, which has made significant efforts to

recover assets on behalf of former e2 shareholders. Due, in part, to the efforts of J. Wade Browne, the e2 Litigation Trust has brought an adversarial proceeding against Farris in U.S. Bankruptcy Court. More recently, on account of the efforts of J. Wade Browne and others, the e2 Litigation Trust has also commenced legal action against Lawrence Ginsburg, Farris' personal attorney and the former outside counsel to e2 who prepared the UWC at Farris' request. The legal action which has been brought against Ginsburg is based upon a collection of improprieties in which he is alleged to have engaged, and encompasses allegations of fraud and breach of fiduciary duty.

7.    Turning once again to Farris, he was also named as a defendant in a separate legal proceeding filed in Texas District Court; Tarrant County, Texas. After being named as a defendant in the U.S. Bankruptcy Court proceeding, together with the Texas District Court case, Farris was asked to provide deposition testimony. Questions put to Farris during the course of those depositions addressed the alleged improprieties in which he and Ginsburg engaged. I have reviewed transcripts reflecting testimony Farris provided in response to those inquiries. Succinctly put, Farris' testimony is untruthful and cannot be relied upon. Moreover, it is my belief that such inaccuracies did not arise as a result any misunderstandings or misapprehensions. To this end, Farris has personally acknowledged that he engaged in a series of deceptive acts while serving as an officer of e2. As part of this admission, Farris specifically confessed to preparing fictitious e2 corporate documents while working in conjunction with Ginsburg. All things considered, the erroneous nature of the UWC remains constant, regardless of Farris' testimony on this topic.

8.    Attached hereto as Exhibit 2 and incorporated by reference herein is a document represented to me to be "Exhibit A" to an NASD complaint against Kevin Calandro and J. Wade

**AFFIDAVIT OF BENNIE M. BRAY – Page 3**

Browne. Although I devoted hundreds of hours to the review and analysis of e2 documents during the period in which I was affiliated with that company, I never saw that document during that time period. Further, notwithstanding my involvement in hundreds of conversations pertaining to the affairs of e2 during the period in which I was affiliated with that company, I was never involved in any conversations which encompassed, or even addressed, Exhibit 2.

9.      Based upon the considerations referenced in paragraph 8, above, and taking all pertinent factors into account, it is my conclusion and belief that Exhibit 2 is not a genuine e2 document or business record. Similarly, it is my conclusion and belief that Exhibit 2 was not prepared by any e2 agents or employees in connection with their official corporate functions.

10.     In March 2001, the e2 board of directors authorized the issuance of 150,000 shares of e2 common stock to J. Wade Browne. Inasmuch as there were only six people serving on the e2 board of directors in March 2001, I played a key role in that authorization process. The issuance of those shares was in recognition of Mr. Browne's service as an advisory director of e2, including contributions he provided while referring potential customers and employees to e2. Neither I nor anyone else at e2 had any agreement or understanding, whether in writing or orally, with J. Wade Browne, or anyone acting on behalf of J. Wade Browne, to pay him finder's fees, commissions, or any other remuneration in connection with any offer or sale of e2 securities, including e2 Preferred A Stock, e2 Preferred B Stock, e2 Preferred C Stock and e2 common stock previously held by Johnny or Janeice Anderson. Further, I never became aware that there was even a suggestion of such an agreement or understanding during the period in which I was affiliated with e2. Clearly, any suggestion of such an agreement or understanding would have served as a major source of concern. Among other things, representations made to potential e2 investors prohibited any agreement or understanding of this nature. Specifically, the stock

purchase agreement which was prepared and disseminated in connection with the offering of e2 preferred C stock assured potential investors that e2 *"has not incurred and will not incur, directly or indirectly, as a result of any action taken by or on behalf of the Company, any liability for brokerage or finders' fees or agents' commissions or any similar charges in connection with this agreement"* (emphasis added).

11.      In sum, neither J. Wade Browne nor Kevin Calandro ever requested payment of finder's fees, commissions or any other remuneration in connection with the offer or sale of e2 securities. Likewise, no statements were ever made to J. Wade Browne or Kevin Calandro with respect to the payment of finder's fees, commissions or any other remuneration in connection with the offer or sale of e2 securities. Similarly, no payment of finder's fees, commissions or any other remuneration was ever made to J. Wade Browne or Kevin Calandro in connection with the offer or sale of e2 securities.

Bennie M. Bray

Subscribed and sworn to before me on this 31 day of August, 2005.

Notary Public, State of Texas

Name (printed:) _Stephenie Shphol_

My commission expires: _Feb 20, 2007_

**AFFIDAVIT OF BENNIE M. BRAY — Page 6**

EXHIBIT 1

**UNANIMOUS WRITTEN CONSENT**
**IN LIEU OF**
**A SPECIAL MEETING**
**OF**
**THE BOARD OF DIRECTORS**

The undersigned, being all of the duly elected directors of e2 Software Corporation, a Texas corporation (the "Company"), acting pursuant to the provisions of the Texas Business Corporation Act, as amended, and the Company's Bylaws, waive notice of the time, place and purpose of the meeting of the Board of Directors of the Company and hereby execute this consent for the purpose of adopting the following resolutions of the Board of Directors of the Company to the same extent and to have the same force and effect as the unanimous vote of the Board of Directors at a formal meeting of the Board of Directors of the Company, duly called and held for the purpose of adopting the following resolutions:

**ISSUANCE OF COMMON STOCK IN CONNECTION WITH PRIVATE**
**PLACEMENT OF SERIES B PREFERRED STOCK**

Whereas, in connection with the private placement of 750,000 shares of Series B Convertible Preferred Stock, par value $0.01 per share (the "Series B Preferred Stock"), the Company agreed to pay finders' fees in connection with the placement of a portion of such shares; and

Whereas, the Company is obligated to pay finders' fees to J. Wade Browne and Kevin Calandro; and

Whereas, Messrs. Browne and Calandro have requested that the Company discharge its obligations to them by paying their finders' fees in shares of common stock, par value $0.01 per share ("Common Stock"), in the Company, on the basis of a value of $7.00 per share of Common Stock; and

Whereas, Mr. Browne has requested that the shares of Company Stock to be issued to him issued to him with Priscilla F. Browne.

RESOLVED, that the Company authorize the issuance to Priscilla F. Browne of 10,177 shares of Common Stock, and authorize the issuance to Mr. Calandro of 3,137 shares of Common Stock.

FURTHER RESOLVED, that, in connection therewith, Mrs. Browne and Mr. Calandro execute a letter agreement containing customary investment representations and an agreement to a right of first refusal.

FURTHER RESOLVED, that the President or any Vice President and the Secretary or any Assistant Secretary of the Company are hereby authorized and directed, in the name and on behalf of the Company, to execute, issue and deliver (i) to Mrs. Browne a certificate evidencing 10,177 shares of fully paid and non-assessable Common

1

PW 269

NASD 001098

Stock, and (ii) to Mr. Calandro a certificate evidencing 3,137 shares of fully paid and non-assessable Common Stock.

FURTHER RESOLVED, that any and all actions to be taken, caused to be taken or heretofore taken by the President of the Company in executing and delivering any and all documents, agreements and instruments and in taking any and all steps deemed by such officer to be necessary or desirable to carry out the intents and purposes of the foregoing resolutions are authorized, ratified and confirmed.

The Secretary of the Company is directed to place this Unanimous Written Consent in the Company's corporate minute book.

This Unanimous Written Consent may be executed in multiple counterparts.

Effective Date: March 11, 2000

DIRECTORS:

_____
Jeffrey D. Abbs

_____
Bonnie M. Bray

2

0410905008:DALLAS.404005.5

## EXHIBIT 2

e3 Communications, Inc.
Series B Convertible Preferred Stock
Subscription List : March 2, 2005

| Last Name | First Name | Investment Amount | Shares | Source | Shares Owed |
|---|---|---|---|---|---|
| Faris | Jeffrey | 400,000 | 70,000 | | |
| Jennings | Daniel | 3,100 | 360 | | |
| Reborn | Thomas | 210,000 | 30,000 | | |
| DSL Investors | | 40,000 | 7,000 | | |
| Faris | Jeffrey | 557,544 | 78,002 | | |
| Falb | Thomas | 10,000 | 1,500 | | |
| Carle | Tensifer | 35,000 | 8,000 | Dan | |
| Bauman | Rie | 4,900 | 700 | Emp. | |
| Bryant | John | 5,000 | 715 | Emp. | |
| Cantwell | Jeffrey | 1,000 | 143 | Emp. | |
| Carter | Chris | 100,000 | 14,280 | Emp. | |
| Clausen | Marley | 7,000 | 1,000 | Emp. | |
| Clavel | Mabel | 210 | 30 | Emp. | |
| Eda | George | 10,000 | 1,400 | Emp. | |
| Goodson | Alan | 7,000 | 1,000 | Emp. | |
| Knopp | Beth | 5,900 | 957 | Emp. | |
| Reeves | Colleen | 5,000 | 715 | Emp. | |
| Kentucky | Shannon | 5,500 | 786 | Emp. | |
| McCausland | James | 7,000 | 1,000 | Emp. | |
| Reynolds | Mallory | 15,400 | 2,200 | Emp. | |
| Smith | Justinian | 1,000 | 143 | Emp. | |
| Spraggins | Betty | 5,000 | 715 | Emp. | |
| Weston | Robert | 4,300 | 600 | Emp. | |
| Bryant | Charles | 2,667 | 381 | Emp. | |
| Bryant | Charles | 30,000 | 4,300 | Emp. | |
| Cantar | Jeffrey | 49,000 | 7,000 | Emp. | |
| Murray | Sheila | 29,900 | 4,285 | Friend | |
| Jackson | William | 49,000 | 7,000 | John K. | |
| Colombo | Debbie | 14,000 | 2,000 | | |
| Browne | J. Wade | 49,001 | 7,143 | rie | |
| Benner | Ian | 49,001 | 7,143 | rie | |
| Rhee | William | 61,012 | 8,716 | Rob | |

(Shares 1,045,000)

| | | | | | |
|---|---|---|---|---|---|
| Marvick | Nicholas | 70,000 | 10,000 | Tim | |
| Finn | Sheryl | 497,533 | 71,000 | Marshall | 41,640 |
| Microplan Equity Fund 604, Ltd. | | 49,000 | 7,000 | Marshall | |
| Trout Venture Capital Partners Ltd | | 430,995 | 61,428 | Marshall | |

3,577 Money Paid in Cash

| | | | | | |
|---|---|---|---|---|---|
| Calandra Living Trust | | 35,000 | 5,000 | Kevin | |
| Don & Sandy Staight Living Trust | | 50,001 | 7,143 | Kevin | |
| Padilla | Anthony | 49,000 | 7,000 | Kevin | |
| Maguee | Charles | 49,000 | 7,000 | Kevin | |
| Leonard E. Cahalic Living Trust | | 14,000 | 2,000 | Kevin | |
| Ladda | Alan | 49,000 | 7,000 | Kevin | |
| Marshall | David | 49,004 | 7,143 | Kevin | 21,000 |
| Richard M. Cianciamoli Living Trust | | 204,001 | 29,148 | Kevin | |
| TaylorGood Partnership | | 49,000 | 7,000 | Kevin | |

(Shares 348,000)

3,577 Payable in Common Shares

| | | | | | |
|---|---|---|---|---|---|
| Bajpe | Chandat | 65,000 | 10,000 | Ian | |
| Broussard | Thomas | 49,000 | 7,000 | Ian | |
| Cannone | Carlos | 49,000 | 7,000 | Ian | |
| Adelson | David & Sharon | 49,000 | 7,000 | Ian | |
| Estra Nagual Trust | | 49,000 | 7,000 | Ian | |
| Flory | Steve | 140,000 | 20,000 | Ian | |
| Henkeshuler Family Partnership | | 49,000 | 7,000 | Ian | |
| PAN 66 PLP | | 103,000 | 14,000 | Ian | |
| Cabinag Holdings, LTD | | 49,000 | 7,000 | Ian | |
| Cruz (McDonald & Colombo to seft) | Ernie | 49,000 | 7,000 | Ian | |
| Dewey | Robert | 35,000 | 5,000 | Webb | |
| Bloodyard | Chandat | 33,001 | 3,572 | Webb | |
| Carter | Daniel | 49,000 | 7,000 | Webb | |
| Dephane | Markie | 49,000 | 7,000 | Webb | |
| Edminster | Philip | 35,000 | 5,000 | Webb | |
| Paforan | Seth | 21,000 | 3,000 | Webb | |
| Galang | David | 100,002 | 14,280 | Webb | |
| Garret | Daniel | 10,000 | 1,500 | Webb | |
| Guadalupe Investors | | 35,000 | 3,572 | Webb | |
| Hulz, Jr. | Harvey | 175,000 | 25,000 | Webb | |
| Hutchinson | Charlie | 34,000 | 3,500 | Webb | |
| Hyde Family Trust A | | 49,007 | 7,101 | Webb | |
| Johnston | Chad | 50,001 | 7,143 | Webb | |
| Kelley | Myles | 24,900 | 5,000 | Webb | |
| Kluey | Jeff | 21,000 | 3,000 | Webb | |
| Manning | William | 49,000 | 7,000 | Webb | |
| McCosh | William | 49,000 | 7,000 | Webb | |
| McLachlan | Marty | 49,000 | 7,000 | Webb | |
| McLuddie | Pamiel | 21,000 | 3,000 | Webb | |
| Myron H. Band Family Partnership | | 99,000 | 14,000 | Webb | 1,700,000 |
| Myron H. Band Family Trust | | 49,000 | 7,000 | Webb | 21,240 |
| Rand | Elizabeth | 14,000 | 2,000 | Webb | |
| Staurath | Sudarshan | 49,000 | 7,000 | Webb | |
| Vogel | William | 21,000 | 3,000 | Webb | |

(Shares Owed)

3,577 Payable in Common Shares

| Total Deposited & Committed | | | | | |
|---|---|---|---|---|---|

*Plaintiffs Exhibit 3*

# AFFIDAVIT OF STEVEN C. METZGER

STATE OF TEXAS           §
                         §
COUNTY OF DALLAS         §

BEFORE ME, on this day personally appeared, Steven C. Metzger, who, after being by me first duly-sworn, did upon his oath depose and say:

"1.     My name is Steven C. Metzger. I am over the age of twenty-one (21) years and have never been convicted nor accused of any felony. I am fully competent and authorized and empowered to make this affidavit, and the facts stated herein are true and correct based upon my own personal knowledge.

2.      Since August 6, 2003, I have continuously served as the successor Trustee of the e2 Creditors Trust, which was formed pursuant to the Third Amended Joint Plan of Reorganization (the "Plan") for e2 Communications, Inc., proposed by the then Chapter 11 Trustee and Email Partners, LLC, Monarch Partners Venture Fund I, L.P., Chris S. Carter, Ian J. Bonner and J. Wade Browne. Also since August 6, 2003, I have continuously served as the successor Trustee of the e2 Litigation Trust, formed under the Plan and as a member of the Litigation Trust Committee.

3.      Within thirty (30) calendar days after August 6, 2003, I received a collection of documents involving e2 Communications, Inc., which were contained in some 83 "bankers file boxes," along with a number of three-ring binders of documents involving the minutes, stock records, subscription agreements and forms of prospectus of e2 Communications, Inc., same consisting of the remaining business records of e2 Communications, Inc., a Texas corporation, which was the subject of an involuntary petition in bankruptcy filed January 27, 2002, under Case No. 02-30574-BJH-11, a Chapter 11 proceeding in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Proceeding"). In addition, since August 6, 2003, I have worked diligently interviewing former counsel, employees, directors and consultants to and of e2 Communications, Inc. and collected from those individuals copies of additional documents and instruments which should have been included in the documents originally delivered to me as the remaining business records of e2 Communications, Inc.

4.      e2 Communications, Inc. conducted an offering of up to 725,000 shares of its Series B Convertible Preferred Stock pursuant to a Confidential Private Placement Memorandum dated October 11, 1999 during the period from October 11, 1999 through and including March 11, 2000.

5.      The first time I received a copy of a single page bates-stamped "NASD001084" attached to this affidavit as Exhibit "1" was on Tuesday, June 28, 2005, from J. Wade Browne. I have not previously seen the document bates-stamped



"NASD001084" to the best of my knowledge, and to the best of my knowledge it is not a part of or included within the documents in my possession which are what remain of the business records of e2 Communications, Inc.

6.      At no time prior to June 28, 2005, was I in possession of, nor had I reviewed the contents of the document bates-stamped "NASD001084."

7.      In my capacity as the Trustee of the e2 Creditors Trust and the e2 Litigation Trust (the "Trusts") under the Plan, I have been and am continuously engaged in the process of implementing the Plan by, among other things, collecting and attempting to collect assets and documents belonging to the Estate and litigating or otherwise attempting to resolve claims objections and other matters. Part of that process has involved litigation of two adversary proceedings against Jeffrey L. Farris and Jeffrey Dale Cordes under Adversary No. 04-3087 and No. 04-3086, respectively, and related efforts to collect information from those two individuals and others. To the best of my knowledge, I have neither received nor produced the document bates-stamped "NASD001084" through discovery in either adversary proceeding. Also, to the best of my knowledge, neither that document (NASD001084) nor its contents have been referenced during the course of either the Farris or Cordes Adversary Proceedings.

8.      Based on the reviews I made as Trustee of the e2 Creditors Trust and the e2 Litigation Trust, it is my conclusion that the document bates-stamped "NASD001084" is not a genuine business record of e2 Communications, Inc. and was not maintained by e2 Communications, Inc. in the ordinary course of its business pursuant to its document retention practices.

9.      To the best of my knowledge, no NASD personnel have ever contacted, or attempted to contact, me or those working in conjunction with me while searching for information concerning the document bates-stamped "NASD001084" or the issue of whether that document constitutes a bona-fide business record of e2 Communications, Inc. Also, to the best of my knowledge, no NASD personnel have ever contacted, or attempted to contact, me or those working in conjunction with me while searching for information concerning the issue of whether the document bates-stamped "NASD001084" was maintained by e2 Communications, Inc. in the ordinary course of its business pursuant to its document retention practices.

10.      To the best of my knowledge, I am not aware of any accounting, bookkeeping, or financial records of e2 Communications, Inc. which provide or record that either Wade Browne or Kevin Calandro, directly or indirectly, received any compensation pursuant to any offer or sale of stock of e2 Communications, Inc."



FURTHER AFFIANT SAYETH NOT.

_____
Steven C. Metzger, Affiant

SWORN TO AND SUBSCRIBED BEFORE ME this _18th_ day of July, 2005.

ASHLEY GLENDINNING
Notary Public, State of Texas
My Commission Expires
May 13, 2006

_____
Notary Public, State of Texas



e2 Communications, Inc.
Series B Convertible Preferred Stock
Subscription List : March 2, 2000

**EXHIBIT "1"**

### AFFIDAVIT OF KEVIN CALANDRO

STATE OF TEXAS      §
                           §
COUNTY OF DALLAS    §

      Before me, the undersigned authority, on this day personally appeared Kevin Calandro, known to me, who being by me duly sworn, on oath, stated the following:

     1.      My name is Kevin Calandro. I am over the age of twenty-one (21) years, suffer no legal or mental disabilities, and am fully competent to make this affidavit.

     2.      I am a resident of Dallas County, Dallas, Texas and reside at my homestead, 9002 Woodhurst Drive, Dallas, Texas 75243.

     3.      I am a general securities representative for an NASD Broker/Dealer.

     4.      I have been named as a respondent in an NASD complaint dated April 25, 2005, disciplinary hearing number C05050015. Attached to that NASD complaint and incorporated by reference therein was a document marked as Exhibit "A". Attached hereto as Plaintiffs' Exhibit 1 and incorporated by reference herein is a copy of the aforementioned complaint along with Exhibit "A".

     5.      As a means of establishing the falsity of Exhibit "A" affidavits were recently obtained from Bennie M. Bray and Steven C. Metzger. Those affidavits, which are attached hereto, as Plaintiffs' Exhibits 2 and 3 respectively, and incorporated by reference herein, state that the NASD's Exhibit "A" is a false and misleading document.

     6.      I have reviewed Plaintiffs' Verified Original Petition and Request for Disclosure and the assertions set forth therein are true and correct to the best of my knowledge.

Kevin Calandro

Subscribed and sworn to before me on this 9th day of December, 2005.

Notary Public, State of Texas

Name (printed :) David W Smith

My commission expires: 7/11/2006

**AFFIDAVIT OF Kevin Calandro -- Page 2**

*Plaintiffs Exhibit 1*

**NASD**
**OFFICE OF HEARING OFFICERS**

| | |
|---|---|
| Department of Enforcement,<br><br>                    **Complainant**<br><br>v.<br><br>**Kevin Calandro,**<br>General Securities Representative<br>[CRD No. 1459109]<br><br>    and<br><br>**James W. Browne,**<br>General Securities Representative<br>[CRD No. 1189996]<br><br>                    **Respondents.** | Disciplinary Proceeding<br>No. C05050015<br><br>Hearing Officer: _____<br><br>**COMPLAINT** |

Upon information and belief, Complainant alleges as follows:

1.   Respondent James W. Browne entered the securities industry on June 1, 1983 as a
     General Securities Representative with an NASD member. During all periods
     mentioned herein, Browne was associated with member firm UBS Financial Services
     Inc. (f/k/a UBS Paine Webber) (hereinafter "UBS") until September 22, 2000, when he
     began employment with member firm Lehman Brothers Inc. ("Lehman"). Browne is
     currently registered with NASD members Maymont Partners, Inc. and Coleman River
     Capital, LLC, and remains subject to the jurisdiction of NASD.

2.   Respondent Kevin Calandro entered the securities industry on September 13, 1988 as a
     General Securities Representative with an NASD member. During all periods

1

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

mentioned herein, Calandro was associated with UBS. Calandro is currently registered

with NASD members Sanders Morris Harris, Inc. and SMH Capital Advisors, Inc.,

and remains subject to the jurisdiction of NASD.

### FACTS COMMON TO ALL CAUSES OF COMPLAINT

3.   During 1997 Browne learned of a company called e2 Communications, Inc. ("e2")

from e2's Chief Executive Officer Jeff Farris. Farris, who was Browne's member firm

customer, wanted Browne to review e2's business plan.

4.   e2 was a privately held start-up technology company that sought initial investors in

anticipation of having an initial public offering ("IPO").

5.   Browne examined the e2 business plan along with Calandro, who also shared Farris as

a member firm customer under a joint representative number.

6.   Beginning in May 1998 and into 1999, Browne, Priscilla Browne (Browne's wife) and

Debbie Calandro (Calandro's wife) purchased stock in e2.

7.   Beginning in 1998, Browne also commenced networking activities for e2 as a private

investor. As set forth more fully below, Browne and Calandro solicited and/or referred

investors to e2. Browne also introduced fellow employees of UBS to e2.

8.   In 1999, Browne became a non-voting "advisory director" of e2 and continued to

engage in networking activities on e2's behalf.

2

COM01
Rev 07/12/02


Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

9. On April 15, 1999, Browne was issued 25,000 stock options (which split to 75,000) as compensation for services provided as an "advisory director" to e2.

10. Under an Advisory Director Agreement dated September 25, 2000,[1] e2 retained Browne "as an independent contractor to perform advisory services." In exchange, Browne agreed to use his best efforts to provide e2 with "advice pertaining to strategic planning and management."

11. Through January 2000, Browne and Calandro discussed e2 as an investment with a number of their member firm clients.

12. On March 11, 2000, Farris and another e2 director executed a Unanimous Written Consent in Lieu of Special Meeting of the Board of Directors (the "Consent").

13. The Consent pertains to the issuance of common stock in connection with private placement of Series B Preferred e2 stock.

14. As set forth in the Consent, Browne and Calandro "requested that [e2] discharge its obligations to them by paying their finders' fees in shares of common stock . . ." and that Browne had requested "that the shares . . . to be issued to him instead be issued to his wife Priscilla F. Browne." Emphasis added.

---

[1] Browne served as an advisory director before the actual date of the Advisory Director Agreement.

3

COM01
Rev 07/12/02

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

15. Under the Consent, e2 authorized the issuance of 10,177 shares of common stock to Priscilla Browne and 3,137 shares of common stock to Calandro. Both Browne and Calandro received and kept their respective shares.

16. On or about January 25, 2002, e2 filed for Bankruptcy. At or about the same time, Browne and other e2 Directors commenced a litigation trust to pursue Farris for alleged improprieties regarding e2.

### FIRST CAUSE OF COMPLAINT
### Participation in Private Securities Transactions
### NASD Conduct Rules 3040 and 2110
### (Respondent Browne)

17. Paragraphs 1 through 16 are realleged and incorporated herein by reference.

18. During the period from December 1999 through March 2000, Browne solicited and/or referred 24 investors to e2, all as more fully detailed on Exhibit "A", attached hereto.

19. Six of the 24 investors that Browne solicited were Browne's member firm customers.

20. After being solicited and/or referred to e2 by Browne, all 24 investors purchased securities issued by e2 in the aggregate amount of $1,780,996.

21. Shortly after March 11, 2000, Browne accepted 10,177, common shares of e2 as compensation for his participation in the aforementioned private securities transactions. Browne's receipt of the 10,177 common shares constitutes selling compensation as defined in NASD Conduct Rule 3040.

4

COM01
Rev 07/12/02

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

22.   Browne did not provide written notice to and obtain written approval from his member

firm regarding his participation in the aforementioned private securities transactions.[2]

23.   Such acts, practices, and conduct constitute separate and distinct violations of NASD

Conduct Rules 3040 and 2110 by Respondent Browne.

## SECOND CAUSE OF COMPLAINT
### Participation in Private Securities Transactions
### NASD Conduct Rules 3040 and 2110
### (Respondent Browne)

24.   Paragraphs 1 through 16 are realleged and incorporated herein by reference.

25.   During the period from August 2000 through September 2000, Browne solicited public

customer SF to purchase both e2 common shares in the aggregate amount of

$300,000.47 from a private investor and e2 Series C Convertible Preferred Stock in the

amount of $300,000 directly from e2.  Browne also communicated with customer SF

via electronic mail regarding the timing of the purchase of the shares, to whom and

where the check should be sent.

26.   On March 5, 2001 e2 conducted a telephonic Board of Directors meeting.

27.   The minutes from the March 5, 2001 Board of Directors meeting reflect that Browne

provided services in connection with the financing of the e2 and that e2 had negotiated

the issuance of 150,000 shares of e2 common stock to Browne.

---

[2] In addition, when filling out a form requesting approval to be a non-voting director of e2, Browne did not disclose that seven months earlier he had received 25,000 stock options from e2.  Even though he had already received the stock options, Browne answered "No" to the question of whether he would receive directors' fees from e2.

COM01
Rev 07/12/02



Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

28. In exchange for Browne's solicitation of public customer SF's purchases in the amount of $600,000.47, as well as Browne's service as an advisory director by facilitating the purchases, on March 5, 2001 e2 issued 150,000 shares of common stock to Browne.

29. Browne's receipt of the 150,000 shares constitutes selling compensation as defined in NASD Conduct Rule 3040.

30. Browne did not provide written notice to and obtain written approval from his member firm regarding his participation in the aforementioned private securities transactions.

31. Such acts, practices, and conduct constitute separate and distinct violations of NASD Conduct Rules 3040 and 2110 by Respondent Browne.

### THIRD CAUSE OF COMPLAINT
### Participation in Private Securities Transactions
### NASD Conduct Rules 3040 and 2110
### (Respondent Calandro)

32. Paragraphs 1 through 16 are realleged and incorporated herein by reference.

33. During the period from January 2000 through March 2000, Calandro solicited and/or referred nine investors to e2, as more fully detailed on Exhibit "A", attached hereto.

34. Four of the nine investors that Calandro solicited were customers of Calandro's employer member firm.

35. After being solicited and/or referred to e2 by Calandro, all nine investors purchased securities issued by e2 in the aggregate amount of $548,996.

6



Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

36.     Shortly after March 11, 2000, Calandro accepted 3,137 common shares of e2 as

        compensation for his participation in the aforementioned private securities

        transactions.

37.     Calandro's receipt of the 3,137 common shares constitutes selling compensation as

        defined in NASD Conduct Rule 3040.

38.     Calandro did not provide written notice to and obtain written approval from his member

        firm regarding his participation in the aforementioned private securities transactions.

39.     Such acts, practices, and conduct constitute separate and distinct violations of NASD

        Conduct Rules 3040 and 2110 by Respondent Calandro.

## PRAYER FOR RELIEF

WHEREFORE, Complainant respectfully requests:

A.  Findings of fact and conclusions of law that the Respondents committed the violations

    charged and alleged herein;

B.  An order imposing sanctions upon the Respondents in accordance with NASD Rule

    8310;

C.  An order requiring the Respondents to disgorge fully any and all ill-gotten gains and/or

    make full and complete restitution, together with interest;

7

COM01
Rev 07/12/02

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro


D.  An order imposing such costs of any proceeding as are deemed fair and appropriate under

the circumstances in accordance with NASD Rule 8330; and


E.  An order imposing any other fitting sanction.


Dated: April 25, 2005

Mitch Atkins, Director
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8000
FAX: 561-443-7995

Sean W. Firley
Senior Regional Attorney
Department of Enforcement
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8125
FAX: 561-443-7995

Rory C. Flynn, Of Counsel
Department of Enforcement
NASD
1801 K Street, N.W., Suite 800
Washington, D.C. 20006
202-974-2874

Andrew A. Favret, Of Counsel
NASD, District No. 5
1100 Poydras Street, Suite 850

8

COM01
Rev 07/12/02

Complaint
Case No. C05050015
James W. Browne/Kevin Calandro

New Orleans, Louisiana 70163-0802
Phone: 504-522-6527
FAX:  504-522-4077

9

# NASD
## OFFICE OF HEARING OFFICERS

| | |
|---|---|
| Department of Enforcement, | Disciplinary Proceeding<br>No. C050500015 |
| Complainant, | |
| v. | Hearing Officer: _____ |
| Kevin Calandro,<br>General Securities Representative<br>[CRD No. 1459109] | Date: April 25, 2005 |
| and | |
| James W. Browne,<br>General Securities Representative<br>[CRD No. 1189996] | |
| Respondents. | |

## ADDENDUM TO COMPLAINT

The customers referenced in the Complaint by initials are identified as follows:

SF – Stephen Flory

Sean W. Firley
Senior Regional Attorney
Department of Enforcement
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8125
FAX: 561-443-7998

e2 Communications, Inc.
Series B Convertible Preferred Stock
Subscription List : March 2, 2000

**NASD**
**OFFICE OF HEARING OFFICERS**

Department of Enforcement,

                        Complainant,

v.

Kevin Calandro,
General Securities Representative
[CRD No. 1459109]

   and

James W. Browne,
General Securities Representative
[CRD No. 1189996]

                   Respondents.

Disciplinary Proceeding
No. C050500015

Hearing Officer: _____

Date: April 25, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April 2005, I caused a copy of the foregoing Notice of Complaint and Complaint to be sent by first class certified mail to: Mr. James Wade Browne, 4435 Southern Avenue, Dallas, Texas 75205 (Receipt No.7004116000675314207), and Mr. Kevin Calandro, 9002 Woodhurst, Dallas, Texas 75243 (Receipt No. 7004116000675314214).

Sean W. Firley
Senior Regional Attorney
Department of Enforcement
NASD, Florida District Office
2500 N. Military Trail, Suite 302
Boca Raton, Fl 33431
Phone: 561-443-8125
FAX: 561-443-7998

*Plaintiff's Exhibit 2*

## AFFIDAVIT OF BENNIE M. BRAY

| | |
|---|---|
| **STATE OF TEXAS** | §<br>§ |
| **COUNTY OF DALLAS** | §<br>§ |

Before me, the undersigned authority, on this day personally appeared Bennie M. Bray, known to me, who being by me duly sworn, on oath, stated the following:

1.    My name is Bennie M. Bray. I am over the age of twenty-one (21) years, suffer no legal or mental disabilities, and am fully competent to make this affidavit.

2.    I served on the Board of Directors of e2 Software Corporation, subsequently known as e2 Communications, Inc. (collectively, "e2") from April 1, 1999 through March 1, 2002, the date on which a Chapter 11 Trustee was appointed to oversee the affairs of e2. As such, I have personal knowledge of the facts stated herein, all of which are true and correct.

3.    Attached as Exhibit 1 and incorporated by reference herein is a copy of a March 11, 2000 Unanimous Written Consent in Lieu of a Special Meeting of the Board of Directors ("UWC") signed by me and Jeffrey L. Farris ("Farris"), the only individuals who then served on the e2 Board of Directors. Pursuant to that UWC, which was drafted by outside counsel for e2 without my input or participation, e2 issued 10,177 shares of common stock to Priscilla F. Browne (J. Wade Browne's spouse). Those shares, however, were thereafter returned and canceled. E2 issued 3,137 shares to Debbie Calandro (Kevin Calandro's spouse). There was absolutely no nexus, connection or relationship of any type between the issuance of those two blocks of e2 common stock and the offer or sale of e2 securities. Neither I nor anyone else at e2 had any agreement or understanding, whether in writing or orally, with J. Wade Browne, Kevin Calandro, or anyone acting on behalf of J. Wade Browne or Kevin Calandro, to pay finder's fees, commissions or any other remuneration to them, or for their benefit, pursuant to the offer or sale

**AFFIDAVIT OF BENNIE M. BRAY -- Page 1**

of e2 securities, including e2 Series B Convertible Stock. The erroneous language appearing in the UWC which suggests otherwise was deemed inconsequential to me and other e2 personnel at the time the UWC was created. As a result, no remedial or corrective action was implemented. Such acts were deemed unwarranted and unnecessary, especially on account of e2's challenging financial situation. In my experience, corporations cannot make a gift of corporate assets, except for charitable purposes. While I do not have personal knowledge as to why counsel inserted the pertinent language appearing in the UWC, I can only assume it was for this reason. In any event, the text of the UWC is inaccurate.

4.      Prior to the time at which the UWC was finalized, neither that document nor any draft thereof was ever provided to J. Wade Browne or Kevin Calandro. Moreover, upon completion of the UWC, neither J. Wade Browne nor Kevin Calandro was advised of the contents of that document or the language appearing therein. Consequently, J. Wade Browne was not told, and had no reason to know, that the UWC characterized the issuance of e2 shares to his wife as a "finder's fee." Likewise, Kevin Calandro was not told, and had no reason to know, that the UWC characterized the ostensible issuance of e2 shares to him as a "finder's fee."

5.      The 10,177 shares of common stock issued to Priscilla F. Browne and 3,137 shares of common stock issued to Debbie Calandro were restricted, non-transferable legend bearing stock that had no value and per e2 policy and I.R.S. rules remained under the ownership and control of e2.

6.      Based upon conduct I have witnessed, Farris is highly adversarial toward J. Wade Browne. J. Wade Browne was a shareholder plan proponent of the Third Amended Joint Plan of Reorganization for e2, which created the e2 Litigation Trust. Moreover, J. Wade Browne played an instrumental role in creating the e2 Litigation Trust, which has made significant efforts to

**AFFIDAVIT OF BENNIE M. BRAY – Page 2**

recover assets on behalf of former e2 shareholders. Due, in part, to the efforts of J. Wade Browne, the e2 Litigation Trust has brought an adversarial proceeding against Farris in U.S. Bankruptcy Court. More recently, on account of the efforts of J. Wade Browne and others, the e2 Litigation Trust has also commenced legal action against Lawrence Ginsburg, Farris' personal attorney and the former outside counsel to e2 who prepared the UWC at Farris' request. The legal action which has been brought against Ginsburg is based upon a collection of improprieties in which he is alleged to have engaged, and encompasses allegations of fraud and breach of fiduciary duty.

7.      Turning once again to Farris, he was also named as a defendant in a separate legal proceeding filed in Texas District Court; Tarrant County, Texas. After being named as a defendant in the U.S. Bankruptcy Court proceeding, together with the Texas District Court case, Farris was asked to provide deposition testimony. Questions put to Farris during the course of those depositions addressed the alleged improprieties in which he and Ginsburg engaged. I have reviewed transcripts reflecting testimony Farris provided in response to those inquiries. Succinctly put, Farris' testimony is untruthful and cannot be relied upon. Moreover, it is my belief that such inaccuracies did not arise as a result any misunderstandings or misapprehensions. To this end, Farris has personally acknowledged that he engaged in a series of deceptive acts while serving as an officer of e2. As part of this admission, Farris specifically confessed to preparing fictitious e2 corporate documents while working in conjunction with Ginsburg. All things considered, the erroneous nature of the UWC remains constant, regardless of Farris' testimony on this topic.

8.      Attached hereto as Exhibit 2 and incorporated by reference herein is a document represented to me to be "Exhibit A" to an NASD complaint against Kevin Calandro and J. Wade

**AFFIDAVIT OF BENNIE M. BRAY – Page 3**

Browne. Although I devoted hundreds of hours to the review and analysis of e2 documents during the period in which I was affiliated with that company, I never saw that document during that time period. Further, notwithstanding my involvement in hundreds of conversations pertaining to the affairs of e2 during the period in which I was affiliated with that company, I was never involved in any conversations which encompassed, or even addressed, Exhibit 2.

9.     Based upon the considerations referenced in paragraph 8, above, and taking all pertinent factors into account, it is my conclusion and belief that Exhibit 2 is not a genuine e2 document or business record. Similarly, it is my conclusion and belief that Exhibit 2 was not prepared by any e2 agents or employees in connection with their official corporate functions.

10.    In March 2001, the e2 board of directors authorized the issuance of 150,000 shares of e2 common stock to J. Wade Browne. Inasmuch as there were only six people serving on the e2 board of directors in March 2001, I played a key role in that authorization process. The issuance of those shares was in recognition of Mr. Browne's service as an advisory director of e2, including contributions he provided while referring potential customers and employees to e2. Neither I nor anyone else at e2 had any agreement or understanding, whether in writing or orally, with J. Wade Browne, or anyone acting on behalf of J. Wade Browne, to pay him finder's fees, commissions, or any other remuneration in connection with any offer or sale of e2 securities, including e2 Preferred A Stock, e2 Preferred B Stock, e2 Preferred C Stock and e2 common stock previously held by Johnny or Janeice Anderson. Further, I never became aware that there was even a suggestion of such an agreement or understanding during the period in which I was affiliated with e2. Clearly, any suggestion of such an agreement or understanding would have served as a major source of concern. Among other things, representations made to potential e2 investors prohibited any agreement or understanding of this nature. Specifically, the stock

purchase agreement which was prepared and disseminated in connection with the offering of e2 preferred C stock assured potential investors that e2 *"has not incurred and will not incur, directly or indirectly, as a result of any action taken by or on behalf of the Company, any liability for brokerage or finders' fees or agents' commissions or any similar charges in connection with this agreement"* (emphasis added).

11.     In sum, neither J. Wade Browne nor Kevin Calandro ever requested payment of finder's fees, commissions or any other remuneration in connection with the offer or sale of e2 securities. Likewise, no statements were ever made to J. Wade Browne or Kevin Calandro with respect to the payment of finder's fees, commissions or any other remuneration in connection with the offer or sale of e2 securities. Similarly, no payment of finder's fees, commissions or any other remuneration was ever made to J. Wade Browne or Kevin Calandro in connection with the offer or sale of e2 securities.

Bennie M. Bray

Subscribed and sworn to before me on this 31 day of August, 2005.

Notary Public, State of Texas

Name (printed:) Stephanie Shephard

My commission expires: Feb. 20, 2007

**AFFIDAVIT OF BENNIE M. BRAY -- Page 6**

EXHIBIT 1

**UNANIMOUS WRITTEN CONSENT**
**IN LIEU OF**
**A SPECIAL MEETING**
**OF**
**THE BOARD OF DIRECTORS**

The undersigned, being all of the duly elected directors of u2 Software Corporation, a Texas corporation (the "Company"), acting pursuant to the provisions of the Texas Business Corporation Act, as amended, and the Company's Bylaws, waive notice of the time, place and purpose of the meeting of the Board of Directors of the Company and hereby execute this consent for the purpose of adopting the following resolutions of the Board of Directors of the Company to the same extent and to have the same force and effect as the unanimous vote of the Board of Directors at a formal meeting of the Board of Directors of the Company, duly called and held for the purpose of adopting the following resolutions:

<u>ISSUANCE OF COMMON STOCK IN CONNECTION WITH PRIVATE</u>
<u>PLACEMENT OF SERIES B PREFERRED STOCK</u>

Whereas, in connection with the private placement of 750,000 shares of Series B Convertible Preferred Stock, par value $0.01 per share (the "Series B Preferred Stock"), the Company agreed to pay finders' fees in connection with the placement of a portion of such shares; and

Whereas, the Company is obligated to pay finders' fees to J. Wade Browne and Kevin Calandro; and

Whereas, Messrs. Browne and Calandro have requested that the Company discharge its obligations to them by paying their finders' fees in shares of common stock, par value $0.01 per share ("Common Stock"), in the Company, on the basis of a value of $7.00 per share of Common Stock; and

Whereas, Mr. Browne has requested that the shares of Common Stock to be issued to him be issued to his wife Priscilla F. Browne.

RESOLVED, that the Company authorize the issuance to Priscilla F. Browne of 10,177 shares of Common Stock, and authorize the issuance to Mr. Calandro of 3,137 shares of Common Stock.

FURTHER RESOLVED, that, in connection therewith, Mrs. Browne and Mr. Calandro execute a letter agreement containing customary investment representations and an agreement to a right of first refusal.

FURTHER RESOLVED, that the President or any Vice President and the Secretary or any Assistant Secretary of the Company are hereby authorized and directed, in the name and on behalf of the Company, to execute, issue and deliver (i) to Mrs. Browne a certificate evidencing 10,177 shares of fully paid and non-assessable Common

1

PW 269

NASD 001098



Stock, and (ii) to Mr. Calandro a certificate evidencing 3,137 shares of fully paid and non-assessable Common Stock.

FURTHER RESOLVED, that any and all actions to be taken, caused to be taken or heretofore taken by the President of the Company in executing and delivering any and all documents, agreements and instruments and in taking any and all steps deemed by such officer to be necessary or desirable to carry out the intents and purposes of the foregoing resolutions are authorized, ratified and confirmed.

The Secretary of the Company is directed to place this Unanimous Written Consent in the Company's corporate minute book.

This Unanimous Written Consent may be executed in multiple counterparts.

Effective Date: March 11, 2000

DIRECTORS:

_____
Jeffrey D. Nihis

_____
Bonnie M. Dray

2

NASD0000R:DALLAS:400043

EXHIBIT 2

e2 Communications, Inc.
Series B Convertible Preferred Stock
Subscription List : March 2, 2005

*(table content illegible)*

Total Deposited & Committed

*PLAINTIFFS Exh, 6. +3*

# AFFIDAVIT OF STEVEN C. METZGER

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, on this day personally appeared, Steven C. Metzger, who, after being by me first duly-sworn, did upon his oath depose and say:

"1.     My name is Steven C. Metzger. I am over the age of twenty-one (21) years and have never been convicted nor accused of any felony. I am fully competent and authorized and empowered to make this affidavit, and the facts stated herein are true and correct based upon my own personal knowledge.

2.     Since August 6, 2003, I have continuously served as the successor Trustee of the e2 Creditors Trust, which was formed pursuant to the Third Amended Joint Plan of Reorganization (the "Plan") for e2 Communications, Inc., proposed by the then Chapter 11 Trustee and Email Partners, LLC, Monarch Partners Venture Fund I, L.P., Chris S. Carter, Ian J. Bonner and J. Wade Browne. Also since August 6, 2003, I have continuously served as the successor Trustee of the e2 Litigation Trust, formed under the Plan and as a member of the Litigation Trust Committee.

3.     Within thirty (30) calendar days after August 6, 2003, I received a collection of documents involving e2 Communications, Inc., which were contained in some 83 "bankers file boxes," along with a number of three-ring binders of documents involving the minutes, stock records, subscription agreements and forms of prospectus of e2 Communications, Inc., same consisting of the remaining business records of e2 Communications, Inc., a Texas corporation, which was the subject of an involuntary petition in bankruptcy filed January 27, 2002, under Case No. 02-30574-BJH-11, a Chapter 11 proceeding in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Proceeding"). In addition, since August 6, 2003, I have worked diligently interviewing former counsel, employees, directors and consultants to and of e2 Communications, Inc. and collected from those individuals copies of additional documents and instruments which should have been included in the documents originally delivered to me as the remaining business records of e2 Communications, Inc.

4.     e2 Communications, Inc. conducted an offering of up to 725,000 shares of its Series B Convertible Preferred Stock pursuant to a Confidential Private Placement Memorandum dated October 11, 1999 during the period from October 11, 1999 through and including March 11, 2000.

5.     The first time I received a copy of a single page bates-stamped "NASD001084" attached to this affidavit as Exhibit "1" was on Tuesday, June 28, 2005, from J. Wade Browne. I have not previously seen the document bates-stamped

"NASD001084" to the best of my knowledge, and to the best of my knowledge it is not a part of or included within the documents in my possession which are what remain of the business records of e2 Communications, Inc.

6.     At no time prior to June 28, 2005, was I in possession of, nor had I reviewed the contents of the document bates-stamped "NASD001084."

7.     In my capacity as the Trustee of the e2 Creditors Trust and the e2 Litigation Trust (the "Trusts") under the Plan, I have been and am continuously engaged in the process of implementing the Plan by, among other things, collecting and attempting to collect assets and documents belonging to the Estate and litigating or otherwise attempting to resolve claims objections and other matters.  Part of that process has involved litigation of two adversary proceedings against Jeffrey L. Farris and Jeffrey Dale Cordes under Adversary No. 04-3087 and No. 04-3086, respectively, and related efforts to collect information from those two individuals and others.  To the best of my knowledge, I have neither received nor produced the document bates-stamped "NASD001084" through discovery in either adversary proceeding.   Also, to the best of my knowledge, neither that document (NASD001084) nor its contents have been referenced during the course of either the Farris or Cordes Adversary Proceedings.

8.     Based on the reviews I made as Trustee of the e2 Creditors Trust and the e2 Litigation Trust, it is my conclusion that the document bates-stamped "NASD001084" is not a genuine business record of e2 Communications, Inc. and was not maintained by e2 Communications, Inc. in the ordinary course of its business pursuant to its document retention practices.

9.     To the best of my knowledge, no NASD personnel have ever contacted, or attempted to contact, me or those working in conjunction with me while searching for information concerning the document bates-stamped "NASD001084" or the issue of whether that document constitutes a bona-fide business record of e2 Communications, Inc.  Also, to the best of my knowledge, no NASD personnel have ever contacted, or attempted to contact, me or those working in conjunction with me while searching for information concerning the issue of whether the document bates-stamped "NASD001084" was maintained by e2 Communications, Inc. in the ordinary course of its business pursuant to its document retention practices.

10.    To the best of my knowledge, I am not aware of any accounting, bookkeeping, or financial records of e2 Communications, Inc. which provide or record that either Wade Browne or Kevin Calandro, directly or indirectly, received any compensation pursuant to any offer or sale of stock of e2 Communications, Inc."



FURTHER AFFIANT SAYETH NOT.

_____

Steven C. Metzger, Affiant

SWORN TO AND SUBSCRIBED BEFORE ME this _18th_ day of July, 2005.

ASHLEY GLENDINNING
Notary Public, State of Texas
My Commission Expires
May 13, 2006

_____

Notary Public, State of Texas

e2 Communications, Inc.
Series B Convertible Preferred Stock
Subscription List : March 2, 2000

| Last Name | First Name | Investment Amount | Shares | Source | Shares Owed |
|---|---|---|---|---|---|
| Fertig | Jeffrey | 495,000 | 70,000 | . | |
| Jennings | David | 2,100 | 300 | . | |
| Roberts | Thomas | 210,000 | 30,000 | . | |
| DSL Investors | | 49,000 | 7,000 | . | |
| Fertig | Jeffrey | 557,144 | 79,592 | . | |
| Fertig | Thomas | 10,500 | 1,500 | . | |
| Carter | Timothy | 35,000 | 5,000 | Chris | |
| Bauman | Eric | 4,900 | 700 | Emp. | |
| Bryant | John | 5,005 | 715 | Emp. | |
| Cantwell | Jeffrey | 1,001 | 143 | Emp. | |
| Carter | Chris | 100,002 | 14,286 | Emp. | |
| Chipman | Harry | 7,000 | 1,000 | Emp. | |
| Davis | Vickie | 210 | 30 | Emp. | |
| Ellis | Denny | 10,500 | 1,500 | Emp. | |
| Geades | Alan | 7,000 | 1,000 | Emp. | |
| Knapp | Keith | 5,999 | 857 | Emp. | |
| Kenan | Colleen | 5,005 | 715 | Emp. | |
| Kennedy | Shannon | 5,339 | 763 | Emp. | |
| McCausland | James | 7,000 | 1,000 | Emp. | |
| Reynolds | Mallory | 16,400 | 2,200 | Emp. | |
| Smith | Jeanine | 1,050 | 150 | Emp. | |
| Spraggins | Betty | 5,005 | 715 | Emp. | |
| Weston | Robert | 4,200 | 600 | Emp. | |
| Bryant | Charles | 2,367 | 361 | Emp. | |
| Bryant | Charles | 29,995 | 4,285 | Emp. | |
| Cordes | Jeffrey | 49,000 | 7,000 | Emp. | |
| Mundy | Steele | 29,995 | 4,285 | Friend | |
| Jackson | William | 49,000 | 7,000 | John K. | |
| Catondro | Debbie | 14,000 | 2,000 | n/a | |
| Browns | J. Wade | 50,001 | 7,143 | n/a | |
| Banner | Ian | 50,001 | 7,143 | n/a | |
| Rhea | William | 61,012 | 8,716 | Rob | |
| | | | | | Shares B's 1,946,988 |
| Merrick | Nicholas | 70,000 | 10,000 | Tim | * 4% |
| Pike | Stuart | 497,000 | 71,000 | Marshall | 41,040 |
| Memphis Equity Fund 954, Ltd. | | 49,000 | 7,000 | Marshall | / 57 |
| Tivoli Venture Capital Partners,Ltd | | 430,000 | 61,435 | Marshall | Already Paid in Cash |
| Catondro Living Trust | | 35,000 | 5,000 | Kevin | |
| Don & Sandy Slaught Living Trust | | 50,001 | 7,143 | Kevin | |
| Fertig | Anthony | 49,000 | 7,000 | Kevin | |
| Krause | Charles | 49,000 | 7,000 | Kevin | Shares B's |
| Leonard E. Cielusks Living Trust | | 14,000 | 2,000 | Kevin | 946,988 |
| Luccia | Alex | 49,000 | 7,000 | Kevin | * 4% |
| Macdonald | David | 49,994 | 7,143 | Kevin | 21,989 |
| Richard M. Clianthwaid Living Trust | | 204,001 | 28,143 | Kevin | / 57 |
| Taylor/Good Partnership | | 49,000 | 7,000 | Kevin | Payable in Common Shares |
| Briggs | Christian | 99,995 | 14,285 | Ian | |
| Brosseau | Thomas | 49,000 | 7,000 | Ian | |
| Concess | Carlos | 49,000 | 7,000 | Ian | |
| Edomson | David & Sharon | 49,000 | 7,000 | Ian | |
| Echo Hearts Trust | | 49,000 | 7,000 | Ian | |
| Flarry | Steve | 140,000 | 20,000 | Ian | |
| Huckabocker Family Partnership | | 49,000 | 7,000 | Ian | |
| PAN #1 FLP | | 105,000 | 15,000 | Ian | |
| Catering Holdings, LTD | | 49,000 | 7,000 | Ian | |
| Chui (McDonald & Catondro to sell) | Emile | 49,000 | 7,000 | Ian | |
| Browns | Robert | 35,000 | 5,000 | Wade | |
| Brynisand | Charles | 25,004 | 3,572 | Wade | |
| Carter | Robert | 49,000 | 7,000 | Wade | |
| Duphorne | Martha | 49,000 | 7,000 | Wade | |
| Sidemiro | Philip | 35,000 | 5,000 | Wade | |
| Fullerton | Sam | 21,000 | 3,000 | Wade | |
| Galkut | David | 100,002 | 14,286 | Wade | |
| Galkut | David | 10,003 | 1,430 | Wade | |
| Quadstage Investors | | 25,004 | 3,572 | Wade | |
| Hula, Jr. | Harvey | 175,000 | 25,000 | Wade | |
| Hutchinson | Claude | 34,998 | 3,880 | Wade | |
| Hyde Family Trust A | | 49,987 | 7,141 | Wade | |
| Johnson | Chad | 50,001 | 7,143 | Wade | |
| Kelley | Myles | 24,990 | 3,300 | Wade | |
| Krets | Jeff | 21,000 | 3,000 | Wade | |
| Manning | William | 49,000 | 7,000 | Wade | |
| McCash | Barry | 49,000 | 7,000 | Wade | |
| McLachlin | Patrick | 49,000 | 7,000 | Wade | Shares B's |
| McLachlin | Patrick | 21,000 | 3,000 | Wade | 1,769,988 |
| Myron H. Bond Family Partnership | | 98,000 | 14,000 | Wade | * 4% |
| Myron H. Bond Family Trust | | 49,000 | 7,000 | Wade | 71,340 |
| Reed | Elizabeth | 14,000 | 2,000 | Wade | / 57 |
| Shaurek | Suburban | 49,000 | 7,000 | Wade | Shares Owed |
| Vogel | William | 21,000 | 3,000 | Wade | Payable in Common Shares |
| **Total Deposited & Committed** | | **4,510,000** | **760,000** | | **16,381** |

**EXHIBIT "1"**

NO. _____

| | |
|---|---|
| JAMES WADE BROWNE AND<br>KEVIN CALANDRO | IN THE DISTRICT COURT |
| VS. | ____ JUDICIAL DISTRICT |
| NASD | DALLAS COUNTY, TEXAS |

### TEMPORARY RESTRAINING ORDER

### AND ORDER SETTING HEARING FOR TEMPORARY INJUNCTION

On this ___ day of December, 2005, the Court heard the application for temporary restraining order which has been presented on behalf of Plaintiffs, James Wade Browne and Kevin Calandro.   After examining the verified pleadings, exhibits, and arguments of counsel, the Court finds there is evidence that harm is imminent to Plaintiffs James Wade Browne and Kevin Calandro, and if the Court does not issue this Temporary Restraining Order, Plaintiffs James Wade Browne and Kevin Calandro will be irreparably injured through Defendant NASD's continuing employment of fraudulent evidence against the Plaintiffs.

Therefore, by this Order, the Court does the following:

1. Restrains Defendant NASD from continuing to knowingly employ fraudulent

    evidence against Plaintiffs in connection with the proceeding it has

    initiated against Plaintiffs

2. Orders the clerk to issue notice to Defendant NASD that the hearing on
    Plaintiffs' Application for Temporary Injunction is set for the ___ day of
    _____, 200__, at _____ a.m./p.m.  The purpose of the hearing
    shall be to determine whether this Temporary Restraining Order should be
    made a Temporary Injunction pending a full trial on the merits; and

3. Sets bond in the amount of $_____.

1

This Order expires on the ___day of _____, 200__.

Signed this ___day of December, 2005, at _____a.m./p.m.

_____
JUDGE PRESIDING

$\beta$

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES WADE BROWNE          §
AND KEVIN CALANDRO        §
                                  §
           Plaintiffs,       §
     v.                           §
                                  §          Civil Action No. _____
NATIONAL ASSOCIATION OF    §
SECURITIES DEALERS, INC.,     §
                                  §
           Defendant.      §
                                  §

## INDEX OF DOCUMENTS
## IN EXHIBIT B

1.      **Docket Sheet** (certified copy) regarding Cause No. DC-05-12327
           pending in the 101st Judicial District Court of Dallas County, Texas

2.      **Documents filed** in Cause No. DC-05-12327
           pending in the 101st Judicial District Court of Dallas County, Texas

       a.      **Plaintiffs' Verified Original Petition and Request for Disclosure**
               filed-stamped 12/09/05

       b.      **Order Denying Temporary Restraining Order**
               executed on 12/09/05

3.      **Certificate of Interested Persons**

JIM HAMLIN, DISTRICT CLERK

# CASE SUMMARY
## CASE NO. DC-05-12327

| JAMES BROWNE | § | Location: | **101st District Court** |
|---|---|---|---|
| vs. | § | Judicial Officer: | **PATTERSON, JAY** |
| NASD | § | Filed on: | **12/09/2005** |
| | § | | |
| | § | | |

---

### CASE INFORMATION

Case Type:   **OTHER (CIVIL)**

---

### PARTY INFORMATION

| | | *Lead Attorneys* | |
|---|---|---|---|
| **PLAINTIFF** | **BROWNE, JAMES WADE** | **BEBEL, CHRISTOPHER J** | 0000000000 |
| **DEFENDANT** | **NASD** | | |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 12/09/2005 | ORIGINAL PETITION (OCA) | |
| 12/09/2005 | BOND FILED | |
| 12/09/2005 | ISSUE CITATION | |
| 12/09/2005 | ISSUE TRO AND NOTICE | |
| 12/14/2005 | ISSUE CITATION | |
| 12/14/2005 | **CITATION** | |
| | NASD                      unserved | |

---

| DATE | FINANCIAL INFORMATION | | |
|---|---|---|---|
| | **PLAINTIFF** BROWNE, JAMES WADE | | |
| | Total Charges | | 248.00 |
| | Total Payments and Credits | | 248.00 |
| | **Balance Due as of  12/15/2005** | | **0.00** |
| 12/09/2005 | Charge | BROWNE, JAMES WADE | 212.00 |
| 12/09/2005 | Charge | BROWNE, JAMES WADE | 28.00 |
| 12/09/2005 | PAYMENT   Receipt # 15223-2005-DCLK | BROWNE, JAMES WADE | (240.00) |
| | (CASE FEES) | | |
| 12/14/2005 | Charge | BROWNE, JAMES WADE | 8.00 |
| 12/14/2005 | PAYMENT   Receipt # 16038-2005-DCLK | BROWNE, JAMES WADE | (8.00) |
| | (CASE FEES) | | |

*Printed on 12/15/2005 at 3:12 PM*