UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES WADE BROWNE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-2469-G |
| NATIONAL ASSOCIATION OF | ) | |
| SECURITIES DEALERS, INC., | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is a motion by the plaintiffs, James Wade Browne ("Browne")

and Kevin Calandro ("Calandro"), for reconsideration of the court's memorandum

opinion and order dismissing their complaint and awarding attorney's fees to the

defendant as a result of the plaintiffs' failed Rule 11 motion. Also before the court is

a motion by Browne for approval of a supersedeas bond and a motion by Mark

Alexander, attorney for both plaintiffs, for withdrawal as counsel to Calandro. For

the reasons stated below, the plaintiffs' motion for reconsideration is denied.

Browne's motion for approval of a supersedeas bond is denied without prejudice, and

Alexander's motion for withdrawal is granted.

## I.  BACKGROUND

On April 25, 2005, the defendant National Association of Securities Dealers

("NASD") filed a complaint against Browne and Calandro arising from sales of stock

in e2 Communications, Inc. ("e2").  Brief in Support of Motion to Dismiss of

National Association of Securities Dealers, Inc. ("NASD Brief") at 6 (citing Plaintiffs'

Verified First Amended Petition and Request for Disclosure ("Original Petition")

¶ 13).  NASD's Department of Enforcement ("DOE") alleged that -- without

receiving written approval from their member firms or providing notice to these firms

regarding their participation -- Browne and Calandro sought and received finders' fees

from e2 for the sale of e2 stock.  *Id*.  If true, this conduct violates NASD Conduct

Rules 3040 and 2110.[1]

On December 9, 2005, Browne and Calandro filed this suit against NASD in

the 101st Judicial District Court of Dallas County, Texas.  National Association of

Securities Dealers, Inc.'s Notice of Removal ("Notice of Removal") at 1.  Claiming

that NASD was relying on an inauthentic document in its disciplinary proceeding

---

[1]     Rule 3040 states that any person associated with a member firm who participates in a private securities transaction must, prior to participating in the transaction, provide written notice to the member with which he is associated.  The required notice must describe the transaction, the associated person's role, and state whether the associated person has received or may receive selling compensation.  If the person has received or may receive selling compensation in connection with the private securities transaction, the member firm must respond to the notice in writing indicating whether it approves or disapproves the proposed transaction.  Rule 2110 requires member to "observe high standards of commercial honor and just and equitable principles of trade."  *See* NASD Brief at 6-7, n.2.

against Browne and Calandro, the plaintiffs sought damages and an *ex parte* temporary restraining order ("TRO") to halt the disciplinary hearing.  Original Petition ¶¶ 4, 8, *attached to* Notice of Removal at Tab A.  The request for the TRO was denied by the state court.  NASD Brief at 7.  On December 16, 2005, NASD removed the case to this court, asserting that the case fell within the court's exclusive jurisdiction by virtue of 15 U.S.C. §§ 78aa and 78y.  Docket Sheet; Notice of Removal at 2.  The plaintiffs, on December 21, 2005, then filed a motion to remand and request for a TRO. Docket Sheet.

On December 28, 2005, the court heard arguments on the plaintiffs' request for a TRO; that same day, the court entered an order denying the plaintiffs' application for a TRO and their motion to remand.  Order, December 28, 2005.

On January 3, 2006, NASD filed a motion to dismiss the claims against it. Docket Sheet.  On February 13, 2006, the plaintiffs filed a response to this motion, not addressing the defendant's arguments but requesting the court to "abate any ruling on the Defendant's Motion pending the Court's determination of the Plaintiffs [sic] Motion for Sanctions filed contemporaneously."  *Id*.; Plaintiffs' Response to Motion to Dismiss ¶ 4.  The following day, the plaintiffs filed their motion for sanctions against NASD, the DOE, and their attorneys, Terri Reicher, John Guild, and Thomas McGraw ("McGraw").  Docket Sheet; Motion for Sanctions.  NASD responded on March 6, 2006, with both a responsive brief and a motion to strike the

plaintiffs' motion for sanctions.  Docket Sheet; Defendant's Motion to Strike and

Alternative Response to Plaintiffs' Motion for Sanctions, and Request for Attorneys'

Fees ("NASD Response").

On May 31, 2006, the court issued a memorandum opinion and order granting

the defendant's motion to dismiss and denying the plaintiffs' motion for Rule 11

sanctions.[2]  Memorandum Opinion and Order, May 31, 2006 ("Order").  On the

same day, the court also issued judgment for the defendant, awarding $24,495.00 in

attorney's fees for the successful defense of the plaintiffs' Rule 11 motion.  Judgment,

May 31, 2006.  Subsequently, on June 16, 2006, the plaintiffs filed the instant

motion for reconsideration of both the dismissal of their complaint and of the award

of attorney's fees.  The motion to reconsider was amended on June 19, 2006.  Docket

Sheet.

## II. ANALYSIS

The plaintiffs' motion for reconsideration challenges both the dismissal of their

claims and the award of attorney's fees to the defendant.  With regard to the

dismissal of their claims, the plaintiffs allege the court erred because (1) the plaintiffs

were not required to exhaust their administrative remedies since the administrative

procedure was clearly shown to be inadequate to prevent irreparable injury; (2) the

court's finding that the NASD had absolute immunity was contrary to binding

---

[2]        In the same order, the court denied as moot the defendant's motion to
strike the plaintiffs' motion for sanctions.  Order.

precedent; and (3) upon finding that the court lacked subject matter jurisdiction due to the plaintiffs' failure to exhaust administrative remedies, the court should have remanded the action to state court.  The plaintiffs challenge the award of attorney's fees to the defendant for its successful defense of the plaintiffs' motion for Rule 11 sanctions, claiming that (1) because the defendant waived the twenty-one day safe harbor provision of Rule 11, the plaintiffs' failure to serve the defendant with the Rule 11 motion did not warrant a finding in favor of the defendant; (2) because the court dismissed the underlying suit for lack of subject matter jurisdiction, the court was without authority to grant sanctions; (3) because the court must find the plaintiffs acted in "bad faith" before awarding attorney's fees and because no such finding has been made in this case, the sanction was improper; (4) because the plaintiffs had not violated a previous court order, sanctions were not warranted; (5) because the court must consider the least severe sanction prior to imposing monetary sanctions, the monetary sanction is unwarranted or, alternatively, is too severe; and (6) because the court had insufficient evidence before it, the court could not determine whether the award of attorney's fees was reasonable.

A.  Standard for Motion for Reconsideration

The Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*." *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993).  Courts in the Fifth Circuit treat so-called

motions to reconsider either as motions to alter or amend under Rule 59 or as motions for relief from judgment under Rule 60. *Id*. If the motion is served within ten days of the rendition of the judgment, it falls under Rule 59(e); if the motion is served after that time, it falls under Rule 60(b). *Id*.; *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 668 (5th Cir.) (en banc), *cert. denied*, 479 U.S. 930 (1986).

In this case, because of the lapse of time since rendition of the judgment, the motion is governed by Rule 60(b). See *Pryor v. U.S. Postal Service*, 769 F.2d 281, 285 (5th Cir. 1985). Under Rule 60(b), a party may obtain relief from a final judgment by showing (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. *See* FED. R. CIV. P. 60(b).

"Motions for reconsideration serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Texas Instruments, Inc. v. Hyundai Electronics Industries, Company Ltd.*, 50 F. Supp. 2d 619,

621 (E.D. Tex. 1999) (quoting *Lupo v. Wyeth-Ayerst Laboratories*, 4 F. Supp. 2d 642, 643 (E.D. Tex. 1997)) (internal quotation marks omitted); see also *McNamara v. Bre-X Minerals Ltd.*, 68 F. Supp. 2d 759, 760-61 (E.D. Tex. 1999) (quoting *Waltman v. International Paper Company*, 875 F.2d 468, 473 (5th Cir. 1989)). Such a motion is not "the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Resolution Trust Corporation v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994). A motion for reconsideration based on recycled arguments serves only to waste the court's resources. *Texas Instruments*, 50 F. Supp. 2d at 621. Accordingly, the court expects litigants to advance their strongest case the first time the court considers the matter. *Id.*

B. Challenges to the Order Dismissing the Plaintiffs' Cause of Action

The plaintiffs challenge the order of dismissal on three grounds. The plaintiffs contend (1) they were entitled to an exception to the exhaustion doctrine because the administrative procedures were insufficient to protect the plaintiffs from irreparable harm; (2) the NASD investigators do not have absolute immunity from civil suit; and (3) upon a finding of lack of subject matter jurisdiction due to the plaintiffs' failure to exhaust their administrative remedies, the court should have remanded the case to the state court. Though the grounds for ruling on the motion for reconsideration may be somewhat repetitious with regard to each of these issues, the court will discuss each separately.

First, the plaintiffs argue that the case should not have been dismissed for lack of subject matter jurisdiction because their claims fell under an exception to the exhaustion doctrine.  Motion for Reconsideration at 6.  Specifically, the plaintiffs argue that because the NASD proceedings were inadequate to prevent irreparable harm to them, their claims were excepted from the rules of exhaustion.  *Id.*  While the plaintiffs assert the correct legal standard regarding exceptions to the exhaustion doctrine,[3] their argument must be rejected as untimely; it is before the court for the first time on this motion for reconsideration.[4]  Accompanying the defendant's motion to dismiss was a cogent and well prepared eighteen-page brief outlining the points of law for consideration by this court.  In that motion, the defendant argued that the plaintiffs' claims were barred because they failed to exhaust their administrative remedies.  *See* Motion to Dismiss at 14-18.  Rather than respond to the arguments

---

[3]     "There are the two principal exceptions to the exhaustion requirement: 1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) when there is a clear and unambiguous statutory or constitutional violation."  *Id.* (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d 1363, 1370-71 (5th Cir. 1980)).

[4]     While the plaintiffs raised an argument regarding irreparable harm earlier in these proceedings, it related to their motion for a temporary restraining order.  *See* Motion for Remand to Texas State Court and Application for Temporary Restraining Order ¶ 7.  Nowhere in response to the motion to dismiss did the plaintiffs assert that the allegedly irreparable harm provided an exception to the exhaustion doctrine.  The court denied the plaintiffs' motion for a TRO.  Once the court rejected that motion, it was incumbent upon the plaintiffs to reassert their irreparable harm argument if they wanted it to be considered on the motion to dismiss.

raised by the defense in its motion to dismiss and brief in support thereof, the
plaintiffs chose to file a fourteen-line response that read more like an answer to a
complaint than a response to a motion. *See* Plaintiffs' Response to Motion to
Dismiss. Nowhere in that inept response did the plaintiffs raise *any* legal arguments.
If the plaintiffs wanted to challenge the defendant's contention that the exhaustion
doctrine barred the plaintiffs' claims, it was incumbent upon the plaintiffs to do so in
response to the motion to dismiss. Instead, the plaintiffs requested an abeyance to
allow them to proceed on their motion for Rule 11 sanctions. *Id.* ¶ 4.

The plaintiffs' second argument challenging dismissal of their claims alleges
that the court's finding that the NASD has absolute immunity from prosecution of
personal liability claims was overly broad and contrary to binding precedent. Motion
for Reconsideration at 5-6. In the order granting the defendant's motion to dismiss,
the court quoted *Austin Municipal Securities, Inc. v. National Association of Securities
Dealers, Inc.*, 757 F.2d 676 (5th Cir. 1985), stating "NASD 'and its disciplinary
officers have absolute immunity from further prosecution of personal liability on
claims arising within the scope of their official duties.'" Order at 11 (quoting *Austin*,
757 F.2d at 679). The plaintiffs contend that the court placed too much reliance on
this excerpt from *Austin*. They quote a later passage from that opinion, Motion for
Reconsideration at 5, where the Fifth Circuit noted that it "need not discuss the
immunity of the NASD [investigators]. The defendants concede that [the

investigators] do not have absolute immunity for their roles in the investigation of [the plaintiff] and as administrators." 757 F.2d at 692-93. The plaintiffs conclude that because Patricia Bourgeois ("Bourgeois"), the investigator in the NASD action against the plaintiffs, does not have absolute immunity, the plaintiffs "should have been allowed to amend their pleadings to more carefully draft their claim, at least against Ms. Bourgeois, rather than having the court dismiss it." *See* Motion for Reconsideration at 5. This argument fails both for its untimeliness and on its merits.

As with the plaintiffs' "exhaustion exception" argument, the plaintiffs are raising this issue for the first time on their motion for reconsideration. Included in the defendant's motion to dismiss and brief in support thereof was the well articulated argument that the case should be dismissed because NASD was entitled to absolute immunity. *See* Motion to Dismiss at 10-12. Nowhere in the plaintiffs' woefully insufficient response did they raise any legal arguments challenging the defendant's claim of immunity. Nothing about this challenge to the court's ruling on the absolute immunity of NASD fits within either the ambit of Rule 60(b) or the narrow purpose for which motions for reconsideration are intended.

On the merits of the plaintiffs' argument regarding absolute immunity, the challenge fails because of one glaringly obvious problem -- Bourgeois is not a party to this case. Original Petition ¶¶ 2-4. While the plaintiffs may be correct that investigators for NASD are not entitled to absolute immunity, they overlook the fact

that in *Austin*, the discussion regarding the lack of absolute immunity for NASD

investigators centered on two investigators who were named defendants in that

action.  See *Austin*, 757 F.2d at 681-82.  Thus, for the first time on a motion for

reconsideration, the plaintiffs ask this court to consider the immunity of a person

who is not a party to the pending action.  Not only is Bourgeois unnamed in the

instant action, but after reviewing the record, the court cannot find a single instance

where the plaintiffs included her name in any pleading or other filing with the court.[5]

Moreover, even in this motion, the plaintiffs fail to explain how Bourgeois's lack of

immunity affects the court's obligation under the law to dismiss the claims against

the absolutely immune NASD.

In their third challenge to the court's dismissal order, the plaintiffs contend

that instead of dismissing their complaint for want of jurisdiction, the court should

have remanded the action to the state court.  Motion for Reconsideration at 4-5.  As

with the plaintiffs' prior arguments, this issue is both untimely and unmeritorious.  In

its motion to dismiss, the defendant clearly requested that the court dismiss this case.

National Association of Securities Dealers' Motion to Dismiss Pursuant to FED. R.

CIV. P. 12(b)(6), 12(b)(1) and 12(h)(3) at 2.  If the plaintiffs wanted to challenge the

---

[5]        The only exception to this remarkable absence appears in the plaintiffs'
supporting documents on its motion for a TRO; in the plaintiff's appendix, there is a
reference to Bourgeois.  The court cannot discern how, without prior argument from
the plaintiffs, it was supposed to apprehend from the plaintiffs' appendix that they
intended to seek relief against Bourgeois.

court's authority to order such a dismissal, they had a duty to raise that argument in response to the motion to dismiss.  Again, however, the plaintiffs failed to raise this argument.

As to the merits of this challenge, the court must begin by addressing the procedural posture of this case.  The underlying cause of action was filed originally in state court and removed by the defendant NASD pursuant to 28 U.S.C. § 1441.  Notice of Removal ¶ 6.  The defendant asserted, and the court agreed, that the civil complaint against the NASD fell within the exclusive jurisdiction of the federal courts.  See *Hawkins v. National Association of Securities Dealers Inc.*, 149 F.3d 330, 331-32 (5th Cir. 1998) (stating that despite the plaintiff's attempt to categorize his claims under state law, his actions against the NASD were actions to "enforce . . . liabilit[ies] or dut[ies]" created by federal securities law and thus were subject to the exclusive jurisdiction of the federal courts).  Subsequently, this court dismissed the claims against NASD under Federal Rule of Civil Procedure 12(b)(1), finding that the court lacked subject matter jurisdiction because the plaintiffs had not exhausted their administrative remedies.  Order at 13-14.  The plaintiffs assert in their motion for reconsideration that the defendant is "arguing out of both sides of its mouth" because NASD removed the case to federal court claiming proper jurisdiction only to later challenge such jurisdiction.  Motion for Reconsideration at 3.

The flaw in the plaintiffs' argument is their inability to comprehend the notion of exclusive federal jurisdiction, as well as the differences between statutory jurisdiction and constitutional jurisdiction.  Exclusive jurisdiction is conferred on the federal courts in limited circumstances by Congress in an effort to guard the application of federal law and to facilitate a more uniform interpretation thereof.  *See generally* Note, *Exclusive Jurisdiction of the Federal Courts in Private Civil Actions*, 70 HARV. L. REV. 509 (1957) (discussing the policy arguments for exclusive federal jurisdiction in patent litigation).  In the present case, while the plaintiffs did not raise claims explicitly arising under the Securities and Exchange Act, the state causes of action were a veiled attempt by the plaintiffs to enforce the liabilities and duties of NASD promulgated by that Act.  Thus, the removal from state court to federal court was a necessary step in the process of this litigation because the state court did not have the authority to continue this action -- Congress' grant of exclusive jurisdiction preempted the power of the state tribunal in this case.  Instead of removing the case, the defendant could have moved the state court to dismiss it for lack of subject matter jurisdiction because the state court's jurisdiction was preempted by federal law.  However, to do so would have meant that the state court, not the federal court, would have had the first opportunity to rule on the questions of exclusive jurisdiction, absolute immunity, and exhaustion.  By removing this action to federal court, the defendant availed itself of the underlying purpose of exclusive federal jurisdiction -- to

- 13 -

have a federal court rule on these important preliminary issues.  In determining that

federal jurisdiction was exclusive, this court essentially found that the state court had

no jurisdiction over any of the claims in the pending litigation.  As a result, there was

no state court to which this court could have remanded the case.

In finding that this court did not have subject matter jurisdiction over the

instant litigation, this court did not find a deficiency in the statutory grant of

authority to the federal courts; rather, the court found a constitutional limit to its

authority to hear the case.[6]  Essentially, the exhaustion doctrine is an offshoot of the

ripeness doctrine which is embedded in the Article III case and controversy

requirement.  *See* 2 Am. Jur. 2d *Administrative Law* § 474.  In this case, the court's

determination that it lacked subject matter jurisdiction was a finding by the court

that it lacked the authority under Article III to hear the case because it was not yet

ripe for adjudication.  This holding, however, was in no way contrary to the court's

earlier decision that it had -- by statute -- exclusive jurisdiction over the claim.  To be

clear, the court's decision to dismiss the underlying cause of action for want of

jurisdiction is as follows: under federal statutory law (which preempts the Texas state

law), the only forum in which the claims could have been brought was the federal

forum, but under federal constitutional law, the federal forum could not exercise its

---

[6]      Generally, remand following removal is based on the conclusion that
there is no statutory-based subject matter jurisdiction.  That is, the federal court
remands based on a determination that there is no federal question involved or that
the parties fail to satisfy the requirements of diversity of citizenship jurisdiction.

exclusive jurisdiction because the claim was not yet ripe for adjudication due to the plaintiffs' failure to exhaust their administrative remedies.[7]

None of the plaintiffs' arguments for reconsideration of the order dismissing their complaint is meritorious.  The plaintiffs having presented no reason for the court to disturb its prior order dismissing the case, their motion for reconsideration is denied.

### C.  Challenge to the Order Awarding Attorney's Fees to Defendant

The plaintiffs similarly dispute the court's order awarding attorney's fees to the defendant for the defendant's successful defense of the plaintiffs' motion for Rule 11 sanctions.  This challenge is aimed at both the propriety of the award in general and the amount of the award specifically.  Four arguments are made attacking the court's decision to award the sanctions:  (1) the defendant waived, according to the plaintiffs, the twenty-one day safe harbor provision; (2) because the court found that it lacked subject matter jurisdiction, the court was without authority to impose sanctions; (3) a party cannot be sanctioned without a finding of bad faith; and (4) sanctions cannot

---

[7]      This holding is consistent with Fifth Circuit precedent.  In *McLaurin v. United States*, 392 F.3d 774 (5th Cir.), *cert denied*, ___ U.S. ___, 125 S. Ct. 2549 (2004) the defendant removed the plaintiff's medical malpractice claim to federal court after it was determined that one of the defendants was an employee of the United States and thus the cause of action against him was governed by the Federal Tort Claims Act.  See *id.* at 778.  The district court in *McLaurin* found that the plaintiff failed to exhaust her administrative remedies and subsequently *dismissed* the suit.  See *id.* at 775-76.  On appeal, the Fifth Circuit affirmed both the district court's refusal to remand the case and the district court's dismissal of the cause of action.  *Id.* at 782.

be levied unless it is first found that the sanctioned party violated a prior court order. As to the amount of the sanctions, the plaintiffs argue: (5) the monetary sanctions awarded were not the least severe sanction necessary to obtain compliance and (6) the court lacked sufficient evidence to determine the reasonableness of the defendant's requested amount of attorney's fees.  The plaintiffs' inability to comprehend Rule 11 has already led them to pay heavy price, and regrettably for them, their continued ignorance of the procedure mandated by that rule results today in a costly and continuing lesson.

All of the plaintiffs' arguments challenging the award of attorney's fees under Rule 11 fail to meet the requirements of Rule 60(b) for reconsideration of the earlier judgment.  The arguments raised in this motion either should have been raised in response to the defendant's earlier request for attorney's fees or were previously raised and rejected.  These shortcomings are, without more, sufficient to dispose of all of the plaintiffs' arguments.  However, the court chooses to further explain its rejection of these challenges.

While the factual allegations are set forth in greater detail above, a brief recitation of the chain of events will prove helpful.  In December 2005, this court held a hearing on the plaintiffs' motion for a temporary restraining order; at that hearing certain assertions were made to the court by defense counsel, Thomas C. McGraw.  The plaintiffs apparently took exception to McGraw's representations at

the TRO hearing and, in a series of telephone conversations, informed McGraw of their intent to file a motion for Rule 11 sanctions.  At no point though did the plaintiffs serve upon McGraw a motion for Rule 11 sanctions as required by the rule's twenty-one day safe harbor provision.  Instead, in blatant disregard of the rule's procedures, the plaintiffs filed their motion directly with this court.  In response to the plaintiffs' motion, the defendant attacked both the procedural propriety of the motion and the merits of the motion.  The plaintiffs' reply focused on the defendant's response and, specifically, asserted that the defendant had waived the Rule 11 safe harbor provision by engaging in the telephone conversations.

In the order denying the plaintiffs' motion for sanctions, the court did not reach the merits of the plaintiffs' Rule 11 allegations.  Rather, the court agreed with the defendant and found that the plaintiffs violated the procedural requirements of the rule.  Order at 6-7.  The court found that the plaintiffs' telephone conversations with McGraw did not satisfy Rule 11's strict requirement of service on the opposing party twenty-one days prior to filing with the court.  *Id.*  While not expressly contained in the court's earlier order (though by necessity in the ultimate holding), the court found the plaintiffs' allegation that the defendant waived the safe harbor requirements to be wholly unpersuasive.

The plaintiffs' first argument on reconsideration is a rehashing of their waiver argument raised previously.  This argument not only fails on it merits but is no more

persuasive today than when first asserted.  In their reply to the defendant's response

regarding the motion for sanctions, the plaintiffs argued that McGraw, through his

telephone conversations, waived his right to the safe harbor period.  *See* Reply to

Response to Motion for Sanctions at 1-2.  In support of the proposition that a party

can waive the safe harbor provision, the plaintiffs pointed to *Giganti v. Gen-X*

*Strategies, Inc.*, 222 F.R.D. 299, 307 n.18 (E.D. Va. 2004).  In *Giganti*, the district

court found that the plaintiffs waived their right to the entirety of their twenty-one

day safe harbor period where*, after being served with the motion for sanctions*, 222 F.R.D.

at 304, the plaintiffs took no steps to abandon the position contested in that motion

and, on the twentieth day, appeared before the district court and continued arguing

that position.  See *id.* at 306-07.  This court does not question *Giganti's* conclusion

that a party may waive the safe harbor provision.  However, before such a waiver can

occur, the party must first be served with the motion.

The court was not persuaded by the waiver argument when it was first made

and remains unmoved after its present regurgitation.  Because this waiver argument is

but a rehash of arguments previously made and rejected, reconsideration on this

ground is denied.

The plaintiffs also argue that because jurisdiction over the complaint was found

to be lacking, the court lacked authority to sanction the plaintiffs.  The plaintiffs

attempt to use *Willy v. Coastal Corporation*, 503 U.S. 131 (1992), to support their

argument by drawing a distinction between their conduct and the behavior of the parties sanctioned in *Willy*.  The district court in *Willy* held the plaintiff and his attorney jointly and severally liable under Rule 11 for "creat[ing] a blur of absolute confusion" by filing "a 1,200-page, unindexed, unnumbered pile of materials" that were a "conscious and wanton affront to the judicial process."  *Id.* at 133. Subsequently, the Court of Appeals determined that there was no federal question involved in the underlying suit and thus the district court was without subject matter jurisdiction to consider the complaint.  However, the appellate court affirmed the Rule 11 sanctions.  *Id.*  The *Willy* plaintiff and his attorney challenged the district court's authority to impose Rule 11 sanctions in the absence of subject matter jurisdiction, but the Supreme Court found this argument to be without merit.  *Id.* at 137.  The Court held that while a determination of lack of subject matter jurisdiction precludes all further adjudication, "such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction."  *Id.*  Because adjudication of a Rule 11 motion does not involve a determination on the merits of the underlying claim, a district court lacking subject matter jurisdiction may sanction a party for abusing the judicial process.  *Id.* at 138.  "The interest in having rules of procedure obeyed . . . does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction."  *Id.* at 139.

Browne and Calandro attempt to distinguish their case from *Willy* on the basis that their behavior did not rise to the level of abusive conduct sanctioned in *Willy*. While it may be true that the plaintiffs here were not as disrespectful of the judicial process as those in *Willy*, nothing about that argument indicates that the court lacks the *authority* to levy sanctions.  On the issue of whether a party has violated the rules of procedure, the Supreme Court made it clear in *Willy* that the district court maintains the ability to adjudicate such a collateral issue, notwithstanding a subsequent determination that the court lacks jurisdiction over the case.

In their third argument challenging the court's award of attorney's fees, the plaintiffs claim that before monetary sanctions can be imposed, the court must determine that the plaintiffs acted in bad faith.  The plaintiffs appear to be confused, from their filings, as to why sanctions were imposed.  In this respect, their argument is illustrative of the plaintiffs' inability to grasp the procedures of Rule 11.

Rule 11(c)(1)(A) states, "If warranted, the court may award *to the party prevailing on the motion* the reasonable expenses and *attorney's fees* incurred in . . . opposing the motion."  (emphasis added).  The comments to the Rule further clarify this provision:  "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. . . .  [T]he court may award to the person who prevails on a motion under Rule 11 -- whether the movant or the target of the motion -- reasonable expenses, including attorney's fees, incurred in presenting

or opposing the motion." An award of attorney's fees is proper when the movant fails to comply with the safe harbor provision of Rule 11. See *Connecticut General Life Insurance Company v. Thomas*, 910 F. Supp. 297, 304-05 (S.D. Tex. 1995).

Regarding the plaintiffs' argument that the court must make a specific finding of bad faith prior to imposing sanctions, the plaintiffs have misconstrued the applicable case law. The plaintiffs assert, in their motion for reconsideration, that because the court did not make a specific finding of bad faith, it lacked the authority to impose sanctions. In support of this proposition, they cite *Maguire Oil Company v. City of Houston*, 143 F.3d 205 (5th 1998). Motion for Reconsideration at 14. While *Maguire Oil* does address the need to make a finding of bad faith before imposing sanctions, the error in the plaintiffs' argument is that *Maguire Oil* dealt with the court's *inherent authority* to sanction a party, not its authority under Rule 11. *See* 143 F.3d at 209. Had this court chosen to levy sanctions against the plaintiffs before they themselves filed a motion for Rule 11 sanctions, then this case would arguably have been governed by the *Maguire Oil* standard. However, that is not the case; the plaintiffs filed for Rule 11 sanctions and lost under the most elementary of procedural requirements within that rule. The sanctions imposed upon them stem from their violation of that rule's procedures. "Exercise of the court's inherent authority requires the conclusion that the offending party or lawyer acted in bad faith while exercise of the power granted the court by Rule 11 requires instead a determination as to

whether, judged by the standard of a reasonable party or lawyer, the party or lawyer offended one of the rule's provisions." *Lucas v. Spellings*, 408 F. Supp. 2d 8, 11 (D.D.C. 2006). The standard under Rule 11 is whether the attorney or party in question acted with *objective reasonableness* under the circumstances, not whether he acted in bad faith. See *United States v. Alexander*, 981 F.2d 250, 252 (5th Cir. 1993). Thus, no specific finding of bad faith was required before sanctions could be imposed on the plaintiffs.

The plaintiffs, in their motion for reconsideration, misinterpret the reasoning for the sanctions imposed against them. They seem to believe that the sanction of attorney's fees stems from the court's belief that the merits of their motion for sanctions were improper, but that is not the case. The plaintiffs are being sanctioned because no litigant, upon reasonable inquiry of the applicable law, would have filed the motion for Rule 11 sanctions without first affording the opposing party the twenty-one day safe harbor provision.[8] The plaintiffs have been unable to point to a single case in which an opposing party was deemed to have waived its safe harbor period without first being served with the motion for sanctions. Any reasonable inquiry would have alerted the plaintiffs to their procedural deficiency.

---

[8] Or, in light of the discussion regarding waiver above, without serving the opposing party and allowing that party the opportunity to waive the safe-harbor period.

Next, the plaintiffs contend that the type and/or amount of the sanction imposed against them was erroneous because the court, on a Rule 11 motion, is restricted to levying the least severe sanction necessary to generate compliance.  The court's previous order granting attorney's fees implicitly included a finding that the sanction imposed on the plaintiffs was the least severe sanction necessary to achieve compliance with the Rules.  Woefully, the plaintiffs' subsequent motion for reconsideration demonstrates that the court was in error -- the earlier sanction was *insufficient* in severity to generate compliance.  The plaintiffs' reply to the defendant's response to the motion for reconsideration is illustrative of the fact that the previous sanction was deficient.  In their reply, the plaintiffs state:

> As to the Defendants [sic] request for additional attorney's fees, another question must be asked.  Why is it necessary to cite fifty (50) cases to support one's position, when only twelve (12) would allegedly support one's position?  On this issue the Plaintiffs have incurred $12,000.00 in additional attorney's fees in this matter and request same from this Defendant.

Plaintiffs' Reply to Defendant's Response to Plaintiff's [sic] Amended Motion for Reconsideration and Defendant's Request for Additional Attorney's Fees at 4-5. Mark Alexander, attorney for the plaintiffs, filed an affidavit in support of this request for attorney's fees.  *See* Affidavit in Support of Attorney's Fees.

The court is stunned by the plaintiffs' audacity in requesting attorney's fees to sanction the defendant for its effective advocacy on this motion for reconsideration.

The plaintiffs' request is baseless and vexatious.  More tellingly though, this request is an indication of the fact that the prior award of attorney's fees was insufficient to forestall these plaintiffs from continuing to ask for sanctions where their request has no foundation in the law.[9]

As to the defendant's request for additional attorney's fees in defending the motion for reconsideration to the extent that the motion challenges the court's ruling on the plaintiffs' procedurally improper Rule 11 motion, the court grants such additional fees.  Thus, as supported by the Second Supplemental Declaration of Thomas C. McGraw, the court orders the plaintiffs to pay an additional $11,205.00 as the cost of attorney's fees to the defendant.  *See* Second Supplemental Declaration of Thomas C. McGraw ¶ 6, *attached to* Appendix to Defendant's Response to Plaintiffs' Amended Motion for Reconsideration and Defendant's Request for Additional Attorney's Fees at Exhibit 4.

Lastly, the court addresses the plaintiffs' second challenge to the amount of attorney's fees awarded.  The plaintiffs contend that the award of $24,495 in

---

[9]     The court suggests to the plaintiffs that, rather than volunteering unsolicited advice on effective advocacy in the federal courts, they should restrain themselves from wasting limited judicial resources.  Furthermore, the court recommends that they more thoroughly familiarize themselves with the Federal and Local Rules of Civil Procedure before returning to the federal courts on this or any other matter.  The lessons of procedure learned during this litigation have come at a heavy price to these plaintiffs; it is the sincere desire of this court that they should embrace those lessons, despite the negative ramifications of their behavior to this point, and that they aspire to a higher plane of advocacy in the future.

attorney's fees for the successful defense of their procedurally improper Rule 11 motion was unsupported by the evidence.  Motion for Reconsideration at 14. Specifically, they contend that the court's reliance on the sworn declarations of McGraw was erroneous because the declarations were unsupported by "law firm printouts showing the hours expended for the tasks performed[,] the basis[,] and the amount of the fee is not readily discernable." *Id.*  In a previous declaration, McGraw submitted the hourly rate applicable to this type of litigation, the total number of hours expended in defense of the Rule 11 motion, and an extensive list of the activities he and his firm engaged in while defending the motion.  Supplemental Declaration of Thomas McGraw ("Supplemental Declaration"), *attached to* Defendant's Surreply to Plaintiff's Motion for Sanctions *as* Attachment 1.  The plaintiffs point to no case law supporting the evidentiary burden they seek to establish.[10]  This court previously found, and continues to hold, that the level of detail provided by McGraw in his declarations was sufficient to determine the reasonableness of the award.

Furthermore, the court has before it additional evidence regarding the reasonableness of the requested fees by the defendant -- namely, the affidavits and declarations of the plaintiffs' own attorney regarding the amount of fees incurred

---

[10]     But see *Bynum v. American Airlines, Inc.*, 166 Fed. Appx. 730, 736, 2006 WL 272694, *4 (5th Cir. Feb. 6, 2006) (stating that the wholly conclusory statement in the attorney's affidavit was insufficient to determine the reasonableness of the fee requested).

during the prosecution of the Rule 11 motion.  Attached to the defendant's response to the plaintiffs' Rule 11 motion was a declaration by McGraw in which he stated that he and others at his firm incurred $18,437.50 in defending the plaintiffs' motion for sanctions.  Declaration of Thomas C. McGraw ¶ 8, *attached to* Appendix to Defendant's Motion to Strike and Alternative Response to Plaintiffs' Motion for Sanctions and Request for Attorney's Fees *as* Exhibit 1.  In their reply to the response, the plaintiffs never challenged the reasonableness of this calculation.  Instead, they submitted an affidavit from their attorney, Mark Alexander ("Alexander"), in which he stated that he incurred $18,608.79 worth of fees in connection to the prosecution of the Rule 11 motion.  Affidavit in Support [of] Motion for Sanctions ¶ 3.  Subsequently, the defendant submitted a second declaration from McGraw, attached to its surreply to the plaintiffs' motion for sanctions, indicating that since the previous declaration the total attorney's fees had increased to $24,495.00.  Supplemental Declaration ¶ 2.  The court views the affidavit of Alexander as additional support for the reasonableness of the fees requested by, and granted to, the defendant in this case and, accordingly, sees no reason to alter the previous order.

In their motion for reconsideration, the plaintiffs present no arguments that were not or could not have been raised before the court's previous order.

Furthermore, all of the plaintiffs' arguments regarding the court's order imposing sanctions fail on their merits.

### III.  <u>CONCLUSION</u>

For the above stated reasons, the plaintiffs' motion for reconsideration is **DENIED**, and the defendant's request for additional attorney's fees is **GRANTED**. Browne's motion for approval of supersedeas bond regarding the pending appeal is **DENIED** without prejudice to filing a new bond in an amount to reflect the total amount awarded to the defendant in this case ($35,700.00).  Alexander's motion for withdrawal of counsel is **GRANTED**.

**SO ORDERED**.

December 14, 2006.

A. JOE FISH
CHIEF JUDGE